[No. C028629. Third Dist. Jan. 26, 1999.]

*WILLIAM SCHATZ et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

*Reporter's Note: Supreme Court proceedings in this cause were stayed on April 16, 1999, S077217, due to a pending federal bankruptcy proceeding. Upon termination of the stay, the applicable time period of rule 28(a) will begin to run anew. Action by the Supreme Court subsequent to termination of the stay may thus render this opinion noncitable (see rules 976 and 977, Cal. Rules of Court), notwithstanding that it is reported in this volume.

## COUNSEL

Daniel E. Lungren, Attorney General, Lawrence K. Keethe and Robert D. Milam, Deputy Attorneys General, for Defendant and Appellant.

Michael S. Noble for Plaintiffs and Respondents.

## OPINION

DAVIS, J.—The principal issue in this appeal is when state income tax deficiencies are "assessed" for federal bankruptcy discharge purposes under 11 United States Code section 507(a)(8)(A)(ii) and (iii). (This federal statute, together with 11 United States Code section 523(a)(1)(A), generally specifies that income taxes that are assessed within 240 days of filing of a bankruptcy petition or are assessed after the petition is filed are not dischargeable.) (See *In re King* (9th Cir. 1992) 961 F.2d 1423, 1424 (*King*).)

We disagree with the trial court regarding the assessment date. ▉ We conclude, in line with *King*, that a state income tax deficiency is assessed for bankruptcy discharge purposes when the assessment contained in a notice of proposed deficiency assessment becomes final, either through the passage of time or at the end of an appeal period. This is the point at which the state, the taxing sovereign, has formally acted to finally fix the tax liability. Consequently, we reverse the summary judgment for the plaintiffs that was based on the trial court's determination that the taxes at issue were dischargeable. We direct the trial court to enter summary judgment for the Franchise Tax Board.

### BACKGROUND

Plaintiffs (Schatz) were one of many taxpayers involved in a controversy concerning certain deductions in federal and state income taxes over a period

of years.[1] These deductions were eventually found improper by the federal tax court. Since the California income tax law parallels the federal scheme in this regard, these deductions were not available under California law either.

The present litigation arose when Schatz filed a complaint in state court (pursuant to the bankruptcy court's direction) to determine the dischargeability of the state income tax deficiencies. Schatz and the Franchise Tax Board (Board) filed cross-motions for summary judgment based on the following stipulated facts regarding this deduction controversy:

·1. Schatz owed the Board for income taxes for tax years ending December 31, 1982, through December 31, 1990 (the Board entered assessments for the tax years 1984 and 1985 on the Board's records ["posted"] on December 19, 1993; the parties agree that the Schatz tax debts to the Board for these two tax years are dischargeable).

2. The tax debt to the Board for the 1982 tax year arose from an audit conducted by the Internal Revenue Service (IRS).

3. The Board issued on February 15, 1990, a "Notice of Additional Tax Proposed to be Assessed" for the 1982 tax year. Schatz protested this proposed assessment on April 11, 1990. Schatz and the Board agreed that finalization of the 1982 liability should be postponed until the IRS changes were final.

4. The issues raised in the IRS audit for 1982 included issues that are present in all years in dispute in this case and in a number of other cases. Those issues were resolved in a federal tax court decision that was final on January 27, 1994. This is the date of the final federal determination.

5. On or about January 2, 1994, the Board received from the IRS the federal audit results for the 1982 tax year. On April 12, 1994, the Board received from the IRS the federal audit results for the 1983 to 1990 tax years.

6. On November 21, 1994, the Board followed up on a previous request to Schatz to submit the final computation regarding the 1982 to 1990 tax years.

7. On November 28, 1994, the Board received from Schatz amended returns for the tax years at issue—1982, 1983, and 1986 to 1990. This was the only communication by Schatz to the Board pertaining to the final

---

[1]Apparently, plaintiff William Schatz was not married during some of the tax years in question. The plaintiffs refer to themselves collectively as "Schatz" and we will do the same.

federal determination of the issues resolved by the federal tax court decision. The parties agree that these amended returns were not made within the deadline of Revenue and Taxation Code section 18622 (i.e., within six months after the final federal determination).

8. On November 28, 1994, the Board also received from Schatz an offer in compromise for all years at issue. This offer was sent with the amended returns. The Board refused the offer in compromise on the same day.

9. On November 28, 1994, the Board and Schatz agreed to an installment payment plan of $500 per month. The payments began on December 4, 1994, and ended when Schatz filed bankruptcy on August 30, 1995.

10. The Board issued a "Notice of Action" for the tax year 1982 on December 14, 1994.

11. The Board issued a "Statement of Tax Due" for the tax year 1982 on February 11, 1995.

12. On March 25, 1996, the Board accepted the Schatz amended returns for the years at issue and posted those assessments on the Board's records the same day.

13. On March 29, 1996, the Board mailed to Schatz "Statements of Tax Due" for tax years 1983 and 1986 to 1990.

14. The parties agree that the Board treats amended tax returns as self-assessments.

15. Schatz filed a voluntary petition under chapter 7 of the Bankruptcy Code (11 U.S.C.A. § 701 et seq.) on August 30, 1995.

16. The parties agreed that the only issues to be resolved by the trial court were: (1) whether Schatz's amended returns constituted "required" but late-filed returns, rendering the tax deficiencies at issue nondischargeable under 11 United States Code section 523(a)(1)(B)(ii); and (2) when the assessment of the tax deficiencies at issue occurred for purposes of dischargeability.

The trial court resolved the first issue so as not to foreclose discharge. With respect to the second issue, the trial court ruled: "[Board] accepted [Schatz's] self-assessment of the tax [pursuant to Schatz's November 28, 1994 amended returns] and did not issue a 'deficiency assessment' allowed

by Revenue and Taxation Code section 19059. Under these circumstances, [Schatz's] self-assessment on November 28, 1994 constitutes the 'assessment' for purposes of 11 U.S.C. section 507(a)(8)(A)(ii), and the taxes are outside the 270-day window provided by this section [240 days plus 30 days regarding the November 28, 1994 offer in compromise], and they are dischargeable." The trial court then entered summary judgment for Schatz, and denied summary judgment for the Board.

## DISCUSSION

■ Income taxes that are "assessed" within 240 days of the filing of a bankruptcy petition or are assessed after the petition is filed are not dischargeable in bankruptcy. (*King, supra,* 961 F.2d at p. 1424, citing 11 U.S.C. §§ 507(a)(7)(A)(ii) [now § 507(a)(8)(A)(ii)], 523(a)(1)(A); 11 U.S.C. § 507(a)(8)(A)(iii).)[2] The 240-day period is increased if an offer in compromise with respect to the tax is made within 240 days after the assessment is pending.[3]

Unlike the federal income tax scheme, California does not specifically designate a particular act as the act of assessment. (*King, supra,* 961 F.2d at

---

[2]Section 523(a)(1)(A) states in part:

"(a) A discharge under . . . this title does not discharge an individual debtor from any debt—

"(1) for a tax . . .

"(A) of the kind and for the periods specified in section . . . 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed[.]"

Section 507(a)(8)(A)(ii) and (iii) state in part:

"(a) The following expenses and claims have priority in the following order:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

"(A) a tax on or measured by income . . .

"(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

"(iii) other than a tax of a kind specified in section 523(a)(1)(B) [required return, filed late or not at all] or 523(a)(1)(C) [fraudulent return] of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]"

[3]The amount of the increase is equal to the number of days during which the offer in compromise is pending plus 30 days. (11 U.S.C. § 507(a)(8)(A)(ii); King, Collier Bankruptcy Manual (3d ed. rev. 1999) ¶ 507.10[2][b][ii], p. 507-37 (hereafter, Collier Bankruptcy Manual).)

Here, Schatz made an offer in compromise on November 28, 1994 (the same date they filed their amended returns) and the Board refused the offer the same day. Schatz's offer in compromise thereby added 30 days to the 240-day period of 11 United States Code § 507(a)(8)(A)(ii), *if* that offer was made after the assessment of the tax (if the offer was made prior to assessment of the tax, it has no effect on the 240-day period). (See Collier Bankruptcy Manual, *supra,* ¶ 507.10[2][b][ii], p. 507-37.)

p. 1426.) "A[n] [income] tax deficiency is 'assessed' for purposes of rendering the assessment nondischargeable [in bankruptcy] not when the notice of the assessment is filed, but when the assessment becomes 'final.'" (*In re Bracey* (9th Cir. 1996) 77 F.3d 294, 295, citing *King, supra,* 961 F.2d at p. 1427.) An income tax assessment includes the calculation and fixes the amount payable; once the tax is assessed the taxpayer will owe the sovereign that amount when the date fixed by law for payment arrives. (*King, supra,* 961 F.2d at pp. 1426-1427.) "'[T]o assess' refers to a formal act of fixing of tax liability, and . . . this act comes after the calculation is completed but may be before the amount is due and payable." (*Id.* at p. 1427.) The key consideration in determining when an income tax assessment occurs for bankruptcy discharge purposes is "when the formal tax liability is finally fixed." (Collier Bankruptcy Manual, *supra,* ¶ 507.10[2][b][i], p. 507-36.)

To determine the precise date of state income tax assessment for bankruptcy discharge purposes, one needs to refer to the specific state tax code and practices involved, all against the backdrop of the bankruptcy process. (*King, supra,* 961 F.2d at p. 1427.) State-created labels are not blindly applied. (*Id.* at p. 1426.) Instead, the substantive legal attributes of state law are examined. (*Ibid.*)

Generally, exceptions to bankruptcy discharge are construed narrowly. (*In re Black* (10th Cir. 1986) 787 F.2d 503, 505; but see *Grogan* v. *Garner* (1991) 498 U.S. 279, 283, 286-287 [111 S.Ct. 654, 657, 659-660, 112 L.Ed.2d 755, 762, 764-765].)

Pursuant to California's income tax scheme regarding deficiency assessments, the Board sends the taxpayer a notice of proposed deficiency assessment that "set[s] forth the reasons for the proposed deficiency assessment and the computation thereof." (Rev. & Tax. Code, §§ 19033, 19034, formerly Rev. & Tax. Code, §§ 18583, 18584; all further references to undesignated statutory sections are to the Revenue and Taxation Code unless otherwise noted.) The Board issued Schatz a notice of proposed deficiency assessment for the 1982 tax year on February 15, 1990, pursuant to a "Notice of Additional Tax Proposed to be Assessed" (the parties term this notice the "Notice of Proposed Assessment" or NPA).

A taxpayer has 60 days to file with the Board "a written protest against the proposed deficiency assessment" contained in the notice of proposed deficiency assessment. (§ 19041, formerly § 18590.) Schatz timely protested the February 15, 1990, NPA (that concerned the 1982 tax year) on April 11, 1990. "If a protest is filed, the [Board] shall reconsider the assessment of the deficiency. . . ." (§ 19044, formerly § 18592.) Appeal to the State Board of

Equalization is then permitted; finality is dependent upon the extent to which a taxpayer pursues the appellate process afforded. (§§ 19045-19048, formerly §§ 18593-18596.) Schatz and the Board agreed that, regarding Schatz's April 11, 1990, protest, finality would be postponed until the 1982 tax year liability was resolved at the federal level (the 1982 tax year raised the same underlying deduction issue as all the tax years in dispute). This federal resolution occurred on January 27, 1994, when a federal tax court decision became final.[4]

Finally, "[w]hen a deficiency is determined and the assessment becomes final, the [Board] shall mail notice and demand to the taxpayer for the payment thereof. The deficiency assessed is due and payable at the expiration of 10 days from the date of the notice and demand." (Former § 19049, [formerly § 18597]; see *King, supra,* 961 F.2d at p. 1425, for a summary of the former statutory scheme cited above; see also *Dupuy* v. *Superior Court* (1975) 15 Cal.3d 410, 415-416 [124 Cal.Rptr. 900, 541 P.2d 540].)

On or about January 2, 1994, the Board received from the IRS the federal audit results for the 1982 tax year. On April 12, 1994, the Board received from the IRS the federal audit results for the 1983 to 1990 tax years.

On November 21, 1994, the Board followed up on a previous request to Schatz to submit the final computation regarding the 1982 to 1990 tax years. On November 28, 1994, the Board received from Schatz amended returns for the years at issue—1982, 1983, and 1986 to 1990.

On December 14, 1994, the Board issued a "Notice of Action" for the tax year 1982. This notice was in the form of a notice of proposed deficiency assessment (i.e., an NPA) and stated: "THE NOTICE REFERRED TO ABOVE [i.e., the February 15, 1990, NPA] HAS BEEN REVISED AS FOLLOWS: . . . We are revising our original Notice of Proposed Assessment [issued February 15, 1990] per information provided to us from you, the taxpayer and the Internal Revenue Service. The Negligence Penalty has been waived or abated. We are accepting your amended return received 11/28/94 as correspondence."

The Notice of Action issued on December 14, 1994, for the 1982 tax year, was actually a revised notice of proposed deficiency assessment (i.e., an NPA) under section 19034 ("Each notice shall set forth the reasons for the proposed deficiency assessment and the computation thereof") and section

---

[4]"If no protest is filed, the amount of the proposed deficiency assessment becomes final upon the expiration of the 60-day period provided in Section 19041." (§ 19042, formerly § 18591.)

19060, subdivision (b) ("If, after the six-month period required in Section 18622, a taxpayer reports [to the Board] a change or correction [in federal income taxes] . . . , a notice of proposed deficiency assessment resulting from the adjustment may be mailed to the taxpayer within four years [of that 'report'] . . .."). The December 14, 1994, Notice of Action arose from Schatz's April 11, 1990, protest of the February 15, 1990, NPA. The parties agreed that Schatz's April 11, 1990, protest would be resolved once the final federal determination was made. In line with that agreement, the December 14, 1994, Notice of Action was based on the IRS audit results for the 1982 tax year that the Board received on or about January 2, 1994; on the federal tax court decision that became final on January 27, 1994; and on the amended returns that the Board received from Schatz on November 28, 1994, in response to its requests for taxpayer computation.

 As a notice of *proposed* deficiency assessment, the December 14, 1994, Notice of Action was not an act that fixed the 1982 tax deficiency in a final sense. Since the fixing of tax liability for 1982 *preceded* the fixing of tax liability for the other tax years at issue (the 1982 year being the test case), "assessment" for bankruptcy discharge purposes had to take place after December 14, 1994.

For the 1982 tax year, the Board issued a Statement of Tax Due on February 11, 1995. This statement constituted the notice under section 19049 ("When a deficiency is determined and the assessment becomes final, the [Board] shall mail notice and demand to the taxpayer for the payment thereof"). Thus, the date of the state income tax deficiency "assessment" for the 1982 tax year for bankruptcy discharge purposes (i.e., the date the taxing sovereign, the state, formally acted to finally fix the tax deficiency) occurred shortly before this Statement of Tax Due was issued, but the record does not indicate precisely when this happened.

For the remaining state income tax years at issue (1983 and 1986-1990), the Board, on March 25, 1996, accepted Schatz's amended returns and posted those assessments on the Board's records the same day. The Statements of Tax Due (i.e., the section 19049 notices) for these remaining years were mailed to Schatz on March 29, 1996. For these remaining years, then, the date of assessment for bankruptcy discharge purposes is March 25, 1996, the date the Board accepted the amended returns and posted the assessments. This is the date when the state formally acted to finally fix the tax deficiencies for those years. There is no claim the Board untimely or improperly acted in this regard. (See § 19060, subd. (b).) This acceptance and posting is similar to the federal bankruptcy assessment scheme. (See Collier Bankruptcy Manual, *supra,* at p. 507-36.)

Schatz filed their bankruptcy petition on August 30, 1995. The 1982 tax year deficiency was assessed shortly before February 11, 1995, the date the Statement of Tax Due for 1982 was issued. This is within the 240-day nondischargeable assessment period of 11 United States Code sections 507(a)(8)(A)(ii) and 523(a)(1)(A).[5] Consequently, the 1982 tax deficiency is not dischargeable. The remaining tax year deficiencies (1983, 1986-1990) were assessed on March 25, 1996, when the Board accepted Schatz's amended returns and posted the assessments on the Board's records. A tax that is assessed during a bankruptcy is likewise a nondischargeable tax. (11 U.S.C. §§ 507(a)(8)(A)(iii), 523(a)(1)(A).)

Schatz and the trial court viewed November 28, 1994—the date the Board received Schatz's amended returns—as the date of assessment. To support this view, Schatz pointed to the stipulated fact that "the Board treats amended tax returns as self-assessments." Nevertheless, Schatz concedes on appeal that "substantive state law assessment procedures" determine when taxes are "assessed." This concession is correct in light of *King, supra,* 961 F.2d 1423. The concept of self-assessment was discussed in *In re Priest* (9th Cir. 1983) 712 F.2d 1326. The question there was whether a taxpayer's filing of a return created a definite tax lien. The *Priest* court said no, concluding that some activity by the State was needed to fix the taxpayer's liability. (*Id.* at pp. 1328-1329.)

The trial court, in finding a self-assessment date of November 28, 1994 (the date the Board received Schatz's amended returns), noted that the Board "accepted [Schatz's] self-assessment of the tax and did not issue a 'deficiency assessment' allowed by Revenue and Taxation Code section 19059." As relevant here, section 19059 implicates section 18622, subdivision (a). Section 18622, subdivision (a), states that if the amount of gross income or deductions is changed or corrected by federal officials (as it was here), the taxpayer is to report that change or correction to the Board within six months of the final federal determination of the change or correction. The date of the final federal determination here was January 27, 1994, the date the relevant federal tax court decision became final. The only communication by Schatz to the Board regarding the final federal determination was the Board's receipt of Schatz's amended returns on November 28, 1994, a date more than six months after the final federal determination.

Section 19059, subdivision (a), states that if a taxpayer is required by section 18622, subdivision (a), to report a federal change or correction to the

---

[5]The 240-day period of 11 United States Code section 507(a)(8)(A)(ii) applies because Schatz's offer in compromise—made on November 28, 1994—was made prior to assessment of the tax. (See Collier Bankruptcy Manual, *supra,* ¶ 507.10[2][b][ii], p. 507-37.)

Board and does report the change or correction within six months after the final federal determination, a notice of proposed deficiency assessment resulting from those adjustments may be mailed to the taxpayer within two years of the taxpayer's report. Section 19059, subdivision (a), does not apply here. As noted, Schatz reported the federal change or correction to the Board more than six months after the final federal determination. In that situation, section 19060, subdivision (b), applies. Under section 19060, subdivision (b), a notice of proposed deficiency assessment may be mailed to the taxpayer within four years of the taxpayer's report. Thus, the deadline for this assessment notice was November 28, 1998 (four years from the Board's receipt of Schatz's amended returns on November 28, 1994). The Board met this deadline for the 1982 tax year by issuing the revised notice of proposed deficiency assessment (i.e., the notice of action) on December 14, 1994. (The Board also acted timely regarding the remaining tax years at issue (1983, 1986-1990) by accepting Schatz's amended returns and posting those assessments on the Board's records on March 25, 1996.)

The trial court's and Schatz's view of self-assessment as setting the assessment date highlights a more fundamental problem. California's statutory scheme of deficiency assessment, summarized above, gives the state, not the taxpayer, the role of assessing taxes. This makes sense. As *King* notes, "assessment" is "a formal act of fixing of tax liability" that carries with it significant legal consequences. (961 F.2d at p. 1427.) Assessment is not only the calculation of taxes, but the *fixing* of the amount payable. (*Id.* at p. 1426.) " '*Once the tax is assessed the taxpayer will owe the sovereign [that] amount . . . .*' " (*Ibid.*, italics in original.) "The key consideration [in determining when income tax assessment occurs for bankruptcy discharge purposes is] when the formal tax liability is finally fixed." (Collier Bankruptcy Manual, *supra,* ¶ 507.10[2][b][i], p. 507-36.) Such formality and finality are ultimately matters for the taxing authority. Thus, there must be some formal act by the state to finally fix the taxpayer's liability. The state may agree with the taxpayer's computation, but "assessment" for bankruptcy discharge purposes does not occur until the state formally and finally says it agrees (assuming it does so properly and timely).

Because we have concluded the tax deficiencies at issue are not dischargeable under 11 United States Code section 507(a)(8)(A)(ii) and (iii) (in light of 11 U.S.C. § 523(a)(1)(A)), we need not address the Board's other alleged basis of nondischargeability—11 United States Code section 523(a)(1)(B)(ii) (required tax return, filed late).

### DISPOSITION

The judgment is reversed. The parties stipulated that the two issues regarding dischargeability were the only issues. They filed cross-motions for

summary judgment regarding these two issues based upon a joint statement of stipulated material facts. Because of this posture, we remand to the trial court for it to grant the Board's motion for summary judgment. Each party shall pay its own costs.

Blease, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied February 19, 1999.