In re: James ELLETT, Debtor.

**Gerald Goldberg, Executive Director of the Franchise Tax Board,**
**Appellant,**

v.

**James Ellett, Appellee.**

**No. 00–15128.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2001

Filed July 16, 2001

As Amended on Denial of Rehearing and
Rehearing En Banc Aug. 27, 2001.

Kristian D. Whitten, Deputy Attorney General, San Francisco, California, for the defendant-appellant.

Robert N. Kolb, Antioch, California, for the plaintiff-appellee.

Before: O'SCANNLAIN, TASHIMA, and THOMAS, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a bankruptcy court may enjoin a state tax official from collecting state taxes purportedly discharged in a bankruptcy proceeding in which the State declined to participate.

I

Gerald Goldberg, Executive Director of the Franchise Tax Board of California ("FTB"), appeals from a judgment of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's denial of Goldberg's motion to dismiss an adversary proceeding brought by debtor James Ellett. Ellett seeks declaratory and injunctive relief barring Goldberg from collecting certain pre-petition state income tax obligations that were allegedly discharged in his bankruptcy proceeding.

In 1994, Ellett petitioned for bankruptcy under Chapter 13 of the Bankruptcy Code (the "Code"). He scheduled the FTB as a general unsecured creditor in the amount of $18,000 for non-priority personal income tax obligations for certain years between 1980–1990. He notified the FTB of the commencement of the bankruptcy case, but the FTB did not file a proof of claim or otherwise participate in the bankruptcy proceeding. Ellett's Chapter 13 plan was confirmed in April 1995 and was completed two years later. Because the FTB did not file a proof of claim, it received no distributions under the plan. On April 19, 1997, the bankruptcy court discharged Ellett pursuant to 11 U.S.C. 1328(a).

Several months later, the FTB sent Ellett a demand for payment in the amount of $21,908.52 for personal income taxes for the years 1981, 1983, 1984, 1985, and 1990. The FTB notice stated that such obligations were not discharged in bankruptcy and that collection action was "now pending" and could involve attaching and withholding Ellett's wages, filing a lien on Ellett's real or personal property, or seizing Ellett's personal property. Counsel for Ellett notified the FTB of Ellett's Chapter 13 plan and discharge order, but the FTB again responded that his California income tax obligations had not been discharged and that collection efforts would imminently commence against him. Ellett thereupon filed the present adversary proceeding in bankruptcy court, seeking prospective injunctive and declaratory relief against Gerald Goldberg in his capacity as the Executive Director of the FTB.

Goldberg moved to dismiss for lack of jurisdiction based on state sovereign im-

munity. The bankruptcy court denied Goldberg's motion, holding that Ellett's action was proper under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The BAP affirmed in a published opinion, explaining that Ellett's suit "fits within the classic definition of *Young.*" *Goldberg v. Ellett*, 243 B.R. 741, 744 (9th Cir.BAP1999). This timely interlocutory appeal followed.[1]

## II

■■■ Under *Ex Parte Young* and its progeny, a suit seeking prospective equitable relief against a state official who has engaged in a continuing violation of federal law is not deemed to be a suit against the State for purposes of state sovereign immunity. *Ex Parte Young*, 209 U.S. at 159–160, 28 S.Ct. 441; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (stating that "official-capacity actions for prospective relief are not treated as actions against the State."). Since the State cannot authorize its officers to violate federal law, such officers are "stripped of [their] official or representative character and [are] subjected in [their] person to the consequences of [their] individual conduct." *Ex Parte Young*, 209 U.S. at 160, 28 S.Ct. 441. *Ex Parte Young* relief is available to remedy continuing violations of federal statutory as well as constitutional law. *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1184 (9th Cir.1997).

■■■ The Court has recognized that the *Ex Parte Young* doctrine is based upon the "fiction" that a state officer who violates federal law in his official capacity, pursuant to his authority under state law, is nonetheless not a state agent for sovereign immunity purposes. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269–70, 117

S.Ct. 2028, 138 L.Ed.2d 438 (1997). The Court has embraced this fiction to vindicate the supremacy of federal law. As then-Justice Rehnquist stated for the majority in *Green v. Mansour*, "the availability of prospective relief of the sort awarded in *Ex Parte Young* gives life to the Supremacy Clause," as "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

### A

To be entitled to relief under *Ex Parte Young*, then, Ellett must allege that Goldberg, in his official capacity as Executive Director of the FTB, is engaging in a course of activity in violation of federal law. Ellett contends that Goldberg's threatened collection of his pre-petition state income tax obligations violates federal bankruptcy law. In his complaint, Ellett alleges that he was indebted to the FTB for non-priority state income taxes; that he duly scheduled the FTB as a general unsecured creditor in his Chapter 13 filings; that the FTB was notified of such claims but elected not to file a proof of claim and hence did not receive distributions under Ellett's Chapter 13 plan; and that the FTB's claims were thus properly discharged upon completion of his plan. Because a bankruptcy court's discharge order issued pursuant to 11 U.S.C. § 1328(a) "operates as an injunction against the commencement or continuation of an action" by creditors "to collect, recover or offset ... such [discharged] debt as a personal liability" of debtors, 11 U.S.C. § 524(a)(2), Ellett contends that Goldberg's attempt to collect his pre-petition state income tax obligations contravenes the bankruptcy court's § 524 discharge injunction.

---

**1.** We have jurisdiction over this interlocutory appeal under the collateral order rule. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45, 113 S.Ct.

684, 121 L.Ed.2d 605 (1993) (denial of motion to dismiss based on sovereign immunity is immediately appealable collateral order).

The FTB did not, however, file a proof of claim in Ellett's bankruptcy proceeding or otherwise consent to the bankruptcy court's jurisdiction.[2] Thus, Goldberg's collection of Ellett's state income tax obligations could only violate federal law if the § 524 discharge injunction is binding on the State notwithstanding the State's election not to participate in the bankruptcy proceeding. Accordingly, the threshold question in this case is whether a State that does not consent to a bankruptcy court's jurisdiction by filing a proof of claim or otherwise participating in the bankruptcy proceeding is nonetheless bound by the bankruptcy court's § 524 discharge injunction.

### B

■ Section 106(a)(1) purports to abrogate States' sovereign immunity with respect to various sections of the Bankruptcy Code, including § 524. In *In re Mitchell*, 209 F.3d 1111 (9th Cir.2000), however, we concluded that § 106(a) is unconstitutional to the extent that it authorizes the filing of adversary complaints against non-consenting States as named parties. We held that an adversary proceeding filed against the FTB to determine the dischargeability of taxes owed to the State was a "suit" for purposes of the Eleventh Amendment and hence constitutionally impermissible. 209 F.3d at 1116–17. We considered several factors to reach this conclusion: The debtors' adversary complaint invoked the court's exercise of *in personam* jurisdiction over the State; a summons was issued

against the State compelling its response to the complaint; and "a decision in favor of the [debtors] would effectively prevent the State from collecting monies otherwise due to it...." *Id.* at 1117.

Here, in contrast, no adversary proceeding has been initiated against the State as a named party. The question before us today, then, is whether the "bankruptcy case, in and of itself, constitutes an unconsented suit against a creditor state, so that the debtor's discharge, which operates as an injunction against collection of the debt ... is ineffectual against the state under the Eleventh Amendment." *Texas v. Walker*, 142 F.3d 813, 821 (5th Cir.1998).

The Supreme Court resolved this issue long ago in *New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933). In *Irving Trust*, the Court upheld a district court order barring a tax claim brought by the State of New York because the State failed to file a timely proof of claim. The State argued that the court's bar order was "incompatible with State sovereignty." 288 U.S. at 330, 53 S.Ct. 389. The Court rejected this argument, holding that

> [t]he Federal government possesses supreme power in respect of bankruptcies. If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated.

*Id.* at 333, 53 S.Ct. 389.[3]

---

2. In *Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947), the Court held that a State waives its sovereign immunity by filing a proof of claim in a bankruptcy proceeding, stating that "[w]hen the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim." The Court reaffirmed *Gardner* in *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S.

666, 681 n. 3, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

3. More recently, in dicta, the Court construed former § 106(c) of the Bankruptcy Code to provide that "a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, but would not be subjected to monetary recovery." *Hoffman v. Conn. Dep't of Income Maint.*, 492 U.S. 96, 102, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

According to Goldberg, *Irving Trust* merely stands for the proposition that a State must comply with a bankruptcy court's orders only if it wishes to invoke the jurisdiction of the bankruptcy court and receive its share of the debtor's assets *through the federal bankruptcy proceeding itself.* That is, Goldberg would interpret *Irving Trust* to permit a State to bypass the federal bankruptcy proceeding altogether and yet still "participate in the assets of a bankrupt." But this interpretation directly conflicts with the Court's actual holding in *Irving Trust:* Goldberg conveniently ignores *Irving Trust's* pronouncement that, for a State to share in the assets of a bankrupt, "she must submit to appropriate requirements by the controlling [federal] power." *Id.*

Relying, in part, on *Irving Trust,* both the Fourth and Fifth Circuits have reaffirmed that a bankruptcy discharge injunction is binding on non-consenting States notwithstanding the Court's more recent sovereign immunity jurisprudence. *In re Collins,* 173 F.3d 924, 928–31 (4th Cir. 1999); *Walker,* 142 F.3d at 822–23. In *In re Collins,* the Fourth Circuit held that the Commonwealth of Virginia was not subjected to "suit" for Eleventh Amendment purposes when the bankruptcy court reopened bankruptcy proceedings pursuant to 11 U.S.C. § 350 and determined that the Commonwealth's pre-petition judgment against the debtor for forfeited bail bonds, which the debtor had duly scheduled in his Chapter 7 case and for which the Commonwealth had failed to file a proof of claim, had been discharged by the court's Chapter 7 discharge order. 173 F.3d at 929–31. The Fourth Circuit explained that, unlike an adversary proceeding, a motion to reopen a bankruptcy case does not require service of compulsory process "because the bankruptcy court's power to reopen flows from its jurisdiction over debtors and their estates." *Id.* at 929. Hence, while the Commonwealth was notified of the motion, it was "not named as a defendant, was not served with process, and was not compelled to appear in bankruptcy court." *Id.* The court proceeded to explain that:

> [i]t has long been held that when a state is a creditor, bankruptcy procedure for proof and allowance of claims does not operate as a suit against the state in violation of the Eleventh Amendment. Nothing compels the state to submit to the jurisdiction of the federal bankruptcy court, and the court's power to allow or deny a state's claim derives from the court's jurisdiction over the bankruptcy estate. In short, if a state wishes to share in the estate, it must submit to federal jurisdiction.

*Id.* at 930 (citing *Irving Trust,* 288 U.S. at 333, 53 S.Ct. 389). Thus, the court affirmed the bankruptcy court's order determining that the bankrupt's debt to the Commonwealth had been properly discharged. *Id.*

Similarly, in *Texas v. Walker,* the Fifth Circuit concluded that the bankrupt's debt to the State had been discharged, notwithstanding the fact that the State did not file a proof of claim for such debt in the bankruptcy case. Recognizing that the State's legal rights were adjudicated and altered by the discharge, the court nevertheless held that the State was not thereby subjected to "suit" in violation of the Eleventh Amendment. 142 F.3d at 821–22. The court explained that, where the State is a creditor, "bankruptcy law modifies the state's collection rights with respect to its claims against the debtor, but it also affords the state an opportunity to share in the collective recovery. Bankruptcy operates by virtue of the Supremacy Clause

and without forcing the state to submit to suit in federal court." *Id.* at 822.[4] *Cf. Gwilliam v. United States*, 519 F.2d 407, 412 (9th Cir.1975) (bankruptcy court possessed jurisdiction, under section 17(c) of former Bankruptcy Act, to determine dischargeability of debtor's tax debts to the United States, notwithstanding government's failure to file proof of claim).

■ To be sure, a bankruptcy court's order discharging a state tax obligation "would effectively prevent the State from collecting monies otherwise due to it. . . ." *In re Mitchell*, 209 F.3d at 1117. But under *Irving Trust*, this is not sufficient to transform the underlying bankruptcy case itself into a "suit" against a creditor State for Eleventh Amendment purposes. As the Fourth Circuit explained in *In re Collins*, the bankruptcy court exercises jurisdiction over the *res* of the bankruptcy estate when it issues its discharge order, not *in personam* jurisdiction over the estate's creditors. *Cf. California v. Deep Sea Research, Inc.*, 523 U.S. 491, 506, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998) (holding that Eleventh Amendment does not apply to bar federal court jurisdiction over *in rem* admiralty actions where State claims an interest in, but does not actually possess, the *res* in dispute). Thus, we hold that a bankruptcy court's discharge order is binding on a State, despite the State's election not to share in the recovery of the bankruptcy estate's assets by filing a proof of claim.[5]

## III

■■ While we conclude that a bankruptcy discharge order is binding on States notwithstanding their election not to consent to the bankruptcy court's jurisdiction, a discharge order clearly cannot be *enforced* against non-consenting States in an adversary proceeding where the State or a state agency is a named defendant. *In re Mitchell*, 209 F.3d 1111. The question with which we are presented here is whether a discharge order can be enforced against a state tax official in an action for prospective injunctive and declaratory relief under the *Ex Parte Young* doctrine. Goldberg maintains that the present action against him is barred as falling within one of the exceptions to *Ex Parte Young* that the Supreme Court has recently articulated in *Coeur d'Alene* and *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

## A

In *Coeur d'Alene*, the Coeur d'Alene Tribe claimed title to certain submerged lands within the original boundaries of its reservation and brought suit for declaratory and injunctive relief against various

4. Goldberg suggests that the Court expanded the definition of the term "suit" for purposes of state sovereign immunity in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and hence that *Walker* and *In re Collins* are no longer good law. *Alden*, however, held that the 11th Amendment bars Congress from subjecting non-consenting States to suit in state as well as federal court. *Id.* at 712. The definition of "suit" was not at issue in *Alden*, for the simple reason that Congress unquestionably subjected States to private suits for damages in state court under the Federal Labor Standards Act, regardless of whether one adopts an expansive or narrow understanding of the term "suit." Thus, *Al-*

*den* does not undermine the reasoning of *Walker* or *In re Collins*.

5. Of course, a debtor's particular state tax obligations may fall within an exception to discharge. *See, e.g.,* 11 U.S.C. § 523(a)(1) (excepting from discharge in Chapter 7 and Chapter 11 cases priority tax claims as defined by 11 U.S.C. § 507(c)(8)). Thus, as this case returns to bankruptcy court for proceedings on the merits, the bankruptcy court must determine pre-petition state income taxes were dischargeable. *Cf. Walker*, 142 F.3d at 821 (remanding for determination of whether debtor's obligations to the State were excepted from discharge pursuant to 11 U.S.C. § 523(a)(6)).

state officials. 521 U.S. at 264–65, 117 S.Ct. 2028. The Tribe sought a declaration "of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands," and sought to enjoin the state officials from "regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands" under federal law. *Id.* at 265, 117 S.Ct. 2028. The officials claimed immunity from suit under the Eleventh Amendment and a divided Court agreed. A majority of the Court concluded that the *Ex Parte Young* exception did not apply, explaining that "this case is unusual in that the Tribe's suit is the functional equivalent of a quiet title action [against a State] which implicates special sovereignty interests." *Id.* at 281, 117 S.Ct. 2028. In rejecting the Tribe's *Young* action, the Court emphasized the "far-reaching and invasive relief" sought by the Tribe:

> The suit seeks, in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State. The requested injunctive relief would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters. The suit would diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory. To pass this off as a judgment causing little or no offense to Idaho's sovereign authority and its standing in the Union would be to ignore the realities of the relief the Tribe demands.

*Id.* at 282, 117 S.Ct. 2028.

In an opinion joined only by the Chief Justice, Justice Kennedy proposed a substantial recharacterization of the *Ex Parte Young* doctrine which would require a "case-by-case analysis" of a number of concerns, such as the availability of a state forum to hear the dispute, a "careful balancing" of the federal right at issue against the state's sovereignty interests, and consideration of whether "special factors counse[l] hesitation" in the exercise of jurisdiction.

Justice O'Connor, joined by Justices Scalia and Thomas, rejected Justice Kennedy's "case-by-case" approach to *Ex Parte Young* actions, stating that his approach "unnecessarily recharacterizes and narrows much of our *Young* jurisprudence." *Id.* at 291, 117 S.Ct. 2028 (O'Connor, J., concurring in part). Justice O'Connor concluded that, under the Court's precedents, an *Ex Parte Young* action is generally available "where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id.* at 294, 117 S.Ct. 2028. Nevertheless, Justice O'Connor agreed that *Ex Parte Young* relief was foreclosed in *Coeur d'Alene*, on its unique facts, because the Tribe's action was the "functional equivalent" of a quiet title action against the state that sought to "eliminate altogether the State's regulatory power over the submerged lands at issue—to establish not only that the State has no right to possess the property, but also that the property is not within Idaho's sovereign jurisdiction at all." *Id.* at 289, 117 S.Ct. 2028 (O'Connor, J., concurring in part). Justice O'Connor observed that the Court has "repeatedly emphasized the importance of submerged lands to state sovereignty." *Id.* In dissent, Justice Souter, joined by Justices Stevens, Ginsburg and Breyer, expressed "great satisfaction" that Justice O'Connor's view on *Ex Parte Young*, not Justice Kennedy's, "is the controlling one." *Id.* at 298 (Souter, J., dissenting).

**1**

Goldberg asserts that a bankruptcy court order enjoining him from collecting

state income taxes would intrude on California's "special sovereignty interests" in a manner analogous to the sweeping relief requested by the Coeur d'Alene Tribe.

We recently considered *Coeur d'Alene* in the context of an *Ex Parte Young* challenge to state tax collection in *Agua Caliente Band of Cahuilla Indians v. Hardin,* 223 F.3d 1041 (9th Cir.2000). In *Agua Caliente,* a tribe sought to enjoin California tax officials from imposing a sales and use tax on certain purchases at a tribal resort on reservation land. *Id.* at 1043. The state officials contended that the tribe's action threatened the State's "sovereign authority to tax" and, for this reason, was barred by the Eleventh Amendment under *Coeur d'Alene. Id.* at 1046. We rejected the state officials' Eleventh Amendment defense, explaining *Coeur d'Alene* as follows:

> In *Coeur d'Alene,* it was the unique divestiture of the state's broad range of controls over its own lands that made the Young exception to sovereign immunity inapplicable. Thus, in the case on appeal here, characterizing the state's interest in taxation as a core sovereignty area does not address the question posed by *Coeur d'Alene.* Indeed, the question posed by *Coeur d'Alene* is not whether a suit implicates a core area of sovereignty, but rather whether the relief requested would be so much of a divestiture of the state's sovereignty as to render the suit as one against the state itself. To interpret *Coeur d'Alene* differently would be to open a Pandora's Box as to the relative importance of various state powers or areas of state regulatory authority. The majority did not countenance such a result. Applying this understanding of *Coeur d'Alene* to our case, it is clear that state taxation of tribes presents a very different circumstance from the situation in *Coeur d'Alene.* . . .
>
> [W]e conclude that the Tribe's requested relief would not affect California's sovereignty interests to such "a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury", but would only ensure that the state sales and use tax be applied by state officials in a manner consistent with federal law. Any effect the Tribe's requested relief would have on the state's tax collection activities does not rise to the level of the interference with state sovereignty that existed in *Coeur d'Alene.*

*Id.* at 1048–49 (internal citations omitted).

*Agua Caliente* controls Goldberg's sovereign immunity challenge under *Coeur d'Alene.* Because Ellett's requested relief "would only ensure that the state [income] tax be applied by state officials in a manner consistent with federal [bankruptcy] law," its effect "on the state's tax collection activities does not rise to the level of the interference with state sovereignty that existed in *Coeur d'Alene.*" *Id.* at 1049. To be sure, in *Agua Caliente,* we also relied on the "*competing* sovereignty interests" involved in the state's taxation of tribes, *id.* at 1048, but we expressly noted that "[t]he determination of whether the Young exception applies does not call for a balancing of one sovereign interest vis-a-vis another sovereign interest," *id.*

Goldberg relies heavily on the Tenth Circuit's opinion in *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178 (10th Cir.1998), in which the court held that the *Coeur d'Alene* exception *did* preclude an *Ex Parte Young* challenge to a state taxation scheme. The plaintiffs, operators of gas pipelines, challenged the State's valuation, assessment and taxation of their personal property on Equal Protection grounds. They requested the federal district court "to declare that [Division of Property Valuation officials] should recertify to Counties for subject and future tax years lawful values which comply with state and federal constitutions." *Id.* at 1185. The Tenth Circuit concluded that this amounted to a request "to rewrite Kansas' property tax code with respect to its application against the personal property" of the pipelines and hence constituted "a major intrusion into Kansas' special sovereignty interests" in

violation of the Eleventh Amendment. *Id.* at 1194.

*ANR Pipeline* is distinguishable from the present case. Ellett has not requested the bankruptcy court effectively to "rewrite [California's] [income] tax code." *Id.* Unlike the sweeping and intrusive relief sought in *ANR Pipeline,* which would have imposed *affirmative* obligations on the State, Ellett seeks relief of a merely *prohibitory* nature, which necessarily presents less offense to state sovereignty. Also unlike the plaintiffs in *ANR Pipeline Co.,* Ellett does not challenge the lawfulness of California's income tax code, nor does he question the State's authority to assess the income taxes in the first instance. Instead, he merely seeks to prohibit Goldberg from violating federal bankruptcy law by collecting the pre-petition taxes at issue as if they were continuing obligations owed to the State notwithstanding the bankruptcy court's discharge order.

In support of his position that an injunction barring collection of the disputed income taxes would intrude upon California's special sovereignty interests in violation of the Eleventh Amendment, Goldberg recites various authorities attesting to the States' sovereign interest in the administration of their tax systems. *See, e.g., M'Culloch v. Maryland,* 4 Wheat. 316, 425, 4 L.Ed. 579 (1819); *The Federalist* Nos. 32, 33. We well recognize the profound nature of this interest, but we believe that Goldberg seeks to frame the issue before us at too broad a level of generality. As both *Agua Caliente* and *ANR Pipeline Co.* illustrate, application of the narrow exception to *Ex Parte Young* carved out by *Coeur d'Alene* requires an assessment of the intrusion on state sovereignty of the *specific relief* requested by the plaintiff, not whether the relief merely *relates to* a more general area of core state sovereign interest. The relief requested by the Tribe in *Coeur d'Alene*

would have "extinguish[ed] the State's control over a vast reach of lands and waters," 521 U.S. at 282, 117 S.Ct. 2028; the specific relief at issue in *ANR Pipeline Co.* would have required the State to "rewrite [its] property tax code," 150 F.3d at 1194. In contrast, and analogous to the tribe's action in *Agua Caliente,* Ellett simply seeks prohibitory relief preventing Goldberg from violating the bankruptcy court's discharge injunction by attempting to collect from Ellett specific pre-petition income tax obligations duly discharged in bankruptcy under federal law.

2

■ A conceptually distinct, but related, issue raised by Goldberg is that *Ex Parte Young* relief is foreclosed here because the State is the real party in interest, given that an injunction barring the collection of Ellett's disputed taxes would operate against the State's treasury. This proves too much. The Court has repeatedly observed that prospective relief awarded pursuant to *Ex Parte Young* may have a substantial ancillary effect on a State's treasury, *see Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), but has nevertheless consistently held that this fact alone is insufficient to convert such actions into actions against the State for state sovereign immunity purposes, *see, e.g., Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (school desegregation plan requiring substantial expenditure of state funds constituted prospective remedy and hence was not barred by state sovereign immunity). Indeed, in *Ex Parte Young* itself, the federal injunction barred the State's Attorney General from collecting substantial monetary penalties against railroads. 209 U.S. at 127, 28 S.Ct. 441. The critical distinction is whether the plaintiff requests prospective or retroactive relief.[6] Here, Ellett clearly seeks only prospective relief.

---

**6.** To be sure, we noted in *In re Mitchell* that "it is difficult to draw a rational distinction

between a bankrupt's attempt to recover

Goldberg's reliance on *In re Ayers,* 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887), is similarly misplaced. In *Ayers,* the Court held that a claim for injunctive relief against state officials under the Contracts Clause was barred by state sovereign immunity because the State was the real party in interest. The Court explained that the object of the plaintiffs' action was "by injunction, indirectly, to compel the specific performance of [their] contract" with the State. *Id.* at 502, 8 S.Ct. 164. Because the state officials against whom the injunction was sought were not, themselves, parties to the contract in question, the Court reasoned that the State was the real party in interest. *Id.* at 503–04, 8 S.Ct. 164. Just as the functional equivalent of a quiet title action against a State is barred by state sovereign immunity under *Coeur d'Alene, Ayers* stands for the proposition that the functional equivalent of an action for specific performance against a State is likewise constitutionally impermissible. Ellett's action is neither the functional equivalent of a quiet title action nor the functional equivalent of an action for specific performance of a State contract. Accordingly, *Ayers* is not controlling here.

### 3

■ Goldberg further argues that relief pursuant to *Ex Parte Young* is improper because, as he asserts, California state courts have jurisdiction to determine the dischargeability of Ellett's pre-petition state income tax debts. As support, he cites *Schatz v. Franchise Tax Board,* 69 Cal.App.4th 595, 81 Cal.Rptr.2d 719 (1999). In *Schatz,* the bankruptcy court had directed a debtor to file an action in state court to determine the date on which a

state tax was "assessed" under state law for purposes of a bankruptcy discharge exception. *Id.* at 598–99, 81 Cal.Rptr.2d 719. The fact that the bankruptcy court abstained so that state court could decide a complicated issue of state law does not remotely suggest that the bankruptcy court lacked the power to decide the issue itself. Here, too, the availability, *vel non,* of a state forum is simply irrelevant to the question of whether the federal bankruptcy court itself *lacks* jurisdiction to entertain Ellett's *Ex Parte Young* action.

Although Justice Kennedy attached considerable significance to the availability of a state forum to entertain the federal claim in his recharacterization of the *Ex Parte Young* doctrine in *Coeur d'Alene,* that portion of his opinion was joined only by Chief Justice Rehnquist. *See Coeur d'Alene,* 521 U.S. at 270–74, 117 S.Ct. 2028. Indeed, in *Agua Caliente,* we expressly held that, under the approach of the *Coeur d'Alene* majority, "the existence of a remedy at law in state court is not a bar to the *Young* exception." *Agua Caliente,* 223 F.3d at 1050.

### B

■ Goldberg next contends that the Bankruptcy Code constitutes a "detailed remedial scheme" evidencing Congressional intent to preclude *Ex Parte Young* relief under the reasoning expressed in *Seminole Tribe v. Florida.* In *Seminole Tribe,* the Court held that Congress's attempt to abrogate States' sovereign immunity in the Indian Gaming Regulatory Act ("IGRA") was unconstitutional. 517 U.S. at 72, 116 S.Ct. 1114. At the same time, the Court

funds already paid to the State from one that seeks to discharge present debts to the State." 209 F.3d at 1117. But we made this observation in the context of an action in which the State was a named party. Such actions are barred by the Eleventh Amendment regard-

less of the type of relief the plaintiff requests. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (explaining that Eleventh Amendment bars actions against States "regardless of the nature of the relief sought").

held that the IGRA contained a "detailed remedial scheme" which evidenced Congress's intent to *foreclose* the availability of *Ex Parte Young* injunctive relief against state officials for violations of the substantive provisions of the IGRA. *Id.* at 74–76, 116 S.Ct. 1114.

The IGRA authorized tribes to bring an action in federal court against States that failed to negotiate in good faith with tribes to develop Tribal–State gaming compacts. *Id.* at 49, 116 S.Ct. 1114. If the court found that the State failed to negotiate in good faith, the State and tribe would be directed to conclude such a compact within a 60–day period. If the State and tribe were unable to conclude a compact within this period, a mediator would be appointed to choose one of the compacts proposed by the parties. If the State did not consent to the compact chosen by the mediator, the IGRA provided that the mediator should notify the Secretary of the Interior, who would then prescribe gaming regulations for the tribal lands at issue. *Id.* at 50, 116 S.Ct. 1114.

The Court held that this remedial scheme evidenced Congress's intent to "limit significantly" the State's substantive duty under the IGRA to negotiate in good faith with tribes. *Id.* at 74, 116 S.Ct. 1114. The Court contrasted the "quite modest set of sanctions" available under the IGRA with those available in an action brought against a state official under *Ex parte Young*, which "would expose that official to the full remedial powers of a federal court, including, presumably, contempt sanctions." *Id.* at 75, 116 S.Ct. 1114. The Court further noted that if the IGRA could be enforced in a suit under *Ex Parte Young*, the intricate remedial scheme established by the IGRA "would have been superfluous; it is difficult to see why an Indian tribe would suffer through the intricate scheme of § 2710(d)(7) when more complete and more immediate relief would be available under *Ex parte Young*." *Id.*

While the Bankruptcy Code contains an elaborate scheme relating to the treatment of debtors' state tax obligations, *see* Part IV, *infra*, the Code does not contain a detailed *remedial* scheme *limiting* debtors' remedies in enforcing their rights under bankruptcy law against States, as did the IGRA. As discussed above, § 106(a) of the Bankruptcy Code purports to abrogate state sovereign immunity in bankruptcy proceedings. While we held § 106(a) to be unconstitutional in *In re Mitchell* to the extent that it purports to authorize suits against non-consenting States, § 106(a) nevertheless subjects States to the full range of relief ordinarily available under bankruptcy law, including injunctive relief. Further, as discussed in Part II, *supra*, the § 524 discharge injunction is binding on States notwithstanding state sovereign immunity. Injunctive relief, of course, is the very type of relief Ellett seeks. Thus, it cannot be said that Congress intended to "limit significantly" the sort of relief available to debtors against States that violate provisions of the Bankruptcy Code, as the Court found Congress intended to do in the IGRA.

■ Goldberg argues that the *Seminole Tribe* exception to *Ex Parte Young* applies because the Code purports to subject States as entities, rather than state officials, to the jurisdiction of the bankruptcy courts. However, the mere fact that the Bankruptcy Code does not contain a reference to "state officials" is insufficient to invoke the *Seminole Tribe* exception to *Ex Parte Young*. See *Telespectrum, Inc. v. Pub. Serv. Comm'n of Ky.*, 227 F.3d 414, 420 (6th Cir.2000) (rejecting notion that "Congress' failure to name individuals in a statute is singularly sufficient to bar relief under *Ex parte Young*"); *Natural Res. Def. Council v.*

*Cal. Dep't of Transp.,* 96 F.3d 420, (9th Cir.1996) (holding that provision of Clean Water Act authorizing suit against any "governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution" was sufficient indication that Congress implicitly intended to authorize citizens to bring *Ex Parte Young* suits against state officials). Moreover, state officials who have violated a bankruptcy discharge injunction or automatic stay are subject to contempt sanctions to the same extent as any other creditor who has violated a bankruptcy court order. *See, e.g., In re Rothman,* 76 B.R. 38, 41 (Bankr.E.D.N.Y.1987) (ordering state tax official to show cause why he should not be held in contempt for violating bankruptcy court's discharge injunction by attempting to collect discharged state tax liabilities).

## IV

■ Goldberg next contends that the Tax Injunction Act (the "Act"), 28 U.S.C. § 1341, bars Ellett's action for injunctive and declaratory relief. According to Goldberg, the Act evidences Congress's intent to foreclose *Ex Parte Young* relief in cases such as this, requiring individuals such as Ellett to seek their remedy in state court.

The Act provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The Court has explained that the Act, passed in 1937, "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations" and "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere

with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). We have explained that the Act "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Dillon v. Montana,* 634 F.2d 463, 466 (9th Cir.1980).

There are two interrelated injunctions at issue here: the discharge injunction issued pursuant to 11 U.S.C. § 524 upon completion of Ellett's Chapter 13 plan and the injunction Ellett seeks in the present adversary proceeding under *Ex Parte Young* to compel Goldberg's compliance with the discharge injunction. Because the applicability of the Act to Ellett's *Ex Parte Young* injunction is bound up with the applicability of the Act to the § 524 discharge injunction, we consider the latter issue first.

## A

The Bankruptcy Code contains a detailed scheme relating to a debtor's state and federal tax obligations. A brief overview of the Code's treatment of bankruptcy-related tax matters is in order for a proper understanding of the interaction between the Code and the Act.

The filing of a bankruptcy petition invokes the automatic stay of 11 U.S.C. § 362, which bars, *inter alia,* the collection of pre-petition state taxes. 11 U.S.C. § 362(a)(6); § 106(a)(1); *see, e.g., Adams v. Indiana,* 795 F.2d 27, 29 (7th Cir.1986).

■ Section § 505 of the Code gives federal courts authority, in bankruptcy proceedings, to "determine the amount and legality of *any* tax," 11 U.S.C. § 505(a)(1) (emphasis added), except where the amount and legality of the tax has been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction" prior to the

**1148**

commencement of bankruptcy proceedings, 11 U.S.C. § 505(a)(2)(A). Section 505 provides bankruptcy courts with jurisdiction to resolve state as well as federal tax issues. *See, e.g., City Vending of Muskogee, Inc. v. Okla. Tax Comm'n,* 898 F.2d 122, 124 (10th Cir.1990).

The Code also provides a complex classification of tax obligations for purposes of dischargeability. Section 507(a)(8) provides priority status to certain "unsecured claims of governmental units," including certain "tax[es] on or measured by income or gross receipts": taxes "for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition"; taxes "assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition"; or taxes "not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case." 11 U.S.C. § 507(a)(8)(A)(i), (ii), (iii). Such tax claims receive eighth place priority. *Id.*

Section 523 excepts § 507(a)(8) priority tax claims from discharge in cases under Chapter 7 and Chapter 11. 11 U.S.C. § 523(a)(1)(A). Section 523(a)(1)(A) does not apply to discharges pursuant to § 1328(a); however, under § 1322(a)(2), a debtor's Chapter 13 plan must provide for full payment of all § 507 priority claims. 11 U.S.C. § 1322(a)(2). As discussed above, a discharge in a case under the Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2). Section 106(a)(1) states that § 524 injunctions apply to "governmental units," which include states.

**B**

It is evident that a number of these Code provisions come in direct or indirect conflict with the Tax Injunction Act. For example, the authority conferred on bankruptcy courts by § 505 to "determine the amount and legality of any tax" would appear directly to conflict with the Act, which the Supreme Court has held deprives federal courts of jurisdiction to issue declaratory as well as injunctive relief in matters involving state taxation. *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). A number of courts have addressed this and similar conflicts and have held that the general dictates of the Act do not defeat the specific powers Congress has bestowed upon the federal courts under the Bankruptcy Code. *See, e.g., Adams,* 795 F.2d at 29 (automatic stay bars states from collecting pre-petition taxes notwithstanding Act); *City Vending of Muskogee,* 898 F.2d at 124 (while Act generally precludes federal courts from considering challenges to state tax assessments where taxpayer has failed to pursue state remedies, § 505 specifically grants federal courts jurisdiction to consider such challenges in bankruptcy proceedings); *In re Hechinger Inv. Co.,* 254 B.R. 306 (Bankr.D.Del.2000) ("To the extent that a bankruptcy court must determine a debtor's tax liability in an area where such a determination may otherwise be barred by the Tax Injunction Act, the overwhelming majority view is that Congress expressly conferred jurisdiction on bankruptcy courts to do so in § 505 of the Code.")

In *California State Board of Equalization v. Goggin,* 191 F.2d 726, 728 (9th Cir.1951), we considered the applicability of the Act in bankruptcy proceedings. In

*Goggin,* a bankruptcy trustee challenged a state sales tax assessment imposed by the California Board of Equalization. The district court concluded that the assessment was improper and enjoined the Board from enforcing the assessment against the trustee. We rejected the Board's argument that the injunction was prohibited by the Act, explaining that the Act

> did not abridge the power specifically granted to the bankruptcy court to make such judgments as may be necessary for the enforcement of the provisions of the Bankruptcy Act. The process of dealing with state tax assessments is one essential to the administration of a bankruptcy estate and does not amount to a suit against the state.

*Id.* at 728 (internal citations omitted).

While our conclusion in *Goggin* that there was no "suit" against the state under the facts of that case has been undermined by the Supreme Court's more recent state sovereign immunity jurisprudence, our conclusion that the Act "did not abridge the power specifically granted to the bankruptcy court to make such judgments as may be necessary for the enforcement of the provisions of the Bankruptcy Act" remains good law.

Furthermore, notwithstanding *Goggin,* it is quite apparent that the Act is incompatible with the Bankruptcy Code's detailed scheme governing the dischargeability of tax debts. As reviewed above, § 523(a)(1) excepts only certain taxes from discharge—priority tax claims as defined by § 507(a)(8)—and even these taxes are excepted from discharge only in certain cases. 11 U.S.C. § 523(a)(1). Obviously, those pre-petition tax obligations (such as those at issue here) that are not excepted from discharge are, by definition, discharged along with the debtor's other dischargeable debts. Since 1970, a bankruptcy discharge order has operated as an "injunction" barring the collection of the debtor's discharged obligations. Pub.L. No. 91–467, 84 Stat. 990. It is thus apparent that § 524 of the Code grants bankruptcy courts the power to enjoin the collection of certain state tax obligations, notwithstanding the Act.[7]

Assuming, as we must, the allegations of Ellett's complaint to be true, the disputed income tax obligations were properly discharged upon completion of Ellett's Chapter 13 plan. Hence, Goldberg was already enjoined, by the discharge injunction itself, from "collect[ing], recover[ing] or off-set[ing] ... such [state tax] as a personal liability" of Ellett. 11 U.S.C. § 524(a)(2).

## C

The additional injunctive relief Ellett requests against Goldberg in the present adversary proceeding is no more than a device to compel Goldberg's compliance with the existing § 524 discharge injunction. Because Goldberg was *already* properly enjoined from collecting the disputed taxes, notwithstanding the Act's proscription, such additional injunctive relief does not run afoul of the Act either.

## D

Finally, Goldberg contends that the Tax Injunction Act constitutes a "detailed remedial scheme" precluding *Ex Parte Young* relief under *Seminole Tribe.* According to Goldberg, the limited remedy devised by Congress which forecloses *Ex Parte Young* relief here is a state court remedy pursuant to the dictates of the Act. This argument also fails. For the reasons

---

7. Of course, to the extent that a bankruptcy court seeks to enjoin the collection of state taxes without relying on the specific authorization provided by § 524—for example, by attempting to enjoin a state's tax collection efforts against a non-debtor—the court may be subject to the full force of the Act.

explained above, the Act does not compel Ellett to pursue his action in state court nor does it preclude a bankruptcy court from issuing injunctive relief in cases such as this.

## V

For the foregoing reasons, the judgment of the Bankruptcy Appellate Panel is

**AFFIRMED.**