# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: SHELLI RENEE
JOYE; TERESA M. JOYE,

*Debtors,*

SHELLI RENEE JOYE; TERESA M.
JOYE, aka Michael Joye, Maria
Teresa Joye & Maria Mendoza,

*Plaintiffs-Appellants,*

v.

FRANCHISE TAX BOARD, STATE OF
CALIFORNIA; SELVI STANISLAUS
Executive Officer of State of
California Franchise Tax Board,

*Defendants-Appellees.*

No. 07-15676

D.C. Nos.
CV-06-02415-SC
01-30495-DM

OPINION

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, District Judge, Presiding

Argued and Submitted
October 24, 2008—San Francisco, California

Filed August 21, 2009

Before: J. Clifford Wallace, Sidney R. Thomas and
Susan P. Graber, Circuit Judges.

Opinion by Judge Wallace
Dissent by Judge Graber

11505

## COUNSEL

Robert N. Kolb, Antioch, California, for the plaintiffs-appellants.

Edmund G. Brown, Jr., Attorney General for the State of California, Randall P. Borcherding, Supervising Deputy Attorney General, and Kristian D. Whitten, Deputy Attorney General, San Francisco, California, for the defendants-appellees.

## OPINION

WALLACE, Senior Circuit Judge:

Shelli Renee Joye and Teresa M. Joye (the Joyes) filed an adversary complaint in bankruptcy court against the State of California Franchise Tax Board and its Executive Director, Selvi Stanislaus (collectively, the Board), for declaratory and injunctive relief. The Joyes seek an order declaring that their state tax obligations from the year 2000 were discharged at the conclusion of their Chapter 13 bankruptcy proceeding in 2004. They also seek an injunction enjoining the Board from collecting these outstanding tax liabilities. The Board moved for summary judgment, and the bankruptcy court denied the motion. The district court reversed the bankruptcy court, and entered summary judgment in the Board's favor. The Joyes now appeal from the district court's summary judgment. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 158(c)(2). We reverse and remand.

**I.**

The Joyes filed their Chapter 13 bankruptcy petition on March 7, 2001. The bankruptcy petition scheduled the Board as a priority creditor in the estimated amount of $10,000 for outstanding state income taxes for the year 2000. Pursuant to 11 U.S.C. § 342, official notice of the Joyes' bankruptcy case was then sent to all creditors scheduled in the petition. The notice indicated that the meeting of creditors would take place on April 19, 2001, and that the claims bar date for governmental claims was set for September 3, 2001. The Board does not appear to have attended the meeting of creditors, or otherwise filed objections to the Joyes' bankruptcy plan. The bankruptcy court confirmed the Joyes' bankruptcy plan on May 18, 2001. The Board did not file a proof of claim in the Joyes' case, and the claims bar date for governmental claims elapsed as scheduled.

On October 15, 2001, the Joyes filed their year 2000 state income tax return. Although this return was originally due on April 15, 2001, California law grants taxpayers an automatic six-month extension of the deadline for filing personal income tax returns. The Joyes' year 2000 state tax return was therefore timely filed. The return showed the Joyes owing taxes and penalties totaling $28,178.00. No payment accompanied the return.

The Joyes successfully completed their bankruptcy plan on February 7, 2004. On March 4, 2004, the bankruptcy court discharged the Joyes from bankruptcy pursuant to 11 U.S.C. § 1328(a). The discharge order stated that "the debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502," subject to a few exceptions not relevant here. The order also stated that "[a]ll creditors are prohibited from attempting to collect any debt that has been discharged in this case."

Subsequently, the Board attempted to collect the outstanding taxes reported in the Joyes' year 2000 state tax return. On

March 22, 2005, the Joyes commenced an adversary proceeding in bankruptcy court, alleging that the Board's collection efforts violated the discharge order. The Board filed a motion for summary judgment, arguing that the outstanding taxes survived discharge pursuant to 11 U.S.C. § 1305. In the alternative, the Board argued that barring its collection of these outstanding taxes would violate the constitutional guarantee of fundamental fairness to governmental entities.

The bankruptcy court denied the Board's motion, concluding that the outstanding taxes were properly discharged. With respect to the Board's primary argument, the bankruptcy court observed that section 1305 was inapplicable to the parties' dispute because that section "has nothing to do with discharge. It has to do with whether a creditor, such as the Board, may file a claim, and if so, how that claim is treated. But that's not our case . . . . [The Board] didn't file a claim and it got notice of the proceeding, and the discharge is a final order." The bankruptcy court also rejected the Board's alternative argument regarding the constitutional doctrine of fundamental fairness. The bankruptcy court held that the Board received both adequate notice of the Joyes' bankruptcy case and a meaningful opportunity to file a proof of claim for the outstanding taxes.

The district court on appeal agreed that the outstanding taxes were "technically discharged" through the Chapter 13 proceeding because the Board did not file a proof of claim. However, the district court concluded that the Board was nonetheless entitled to summary judgment because barring collection of the outstanding taxes would constitute a denial of fundamental fairness to the Board. The court held that the Board did not receive adequate notice of its right to payment on the outstanding taxes because "California's income tax system . . . relies on taxpayers to assess how much they owe and inform the [Board] of that amount by filing a tax return," and the Joyes did not file their state tax return until after the claims bar date for governmental claims. The court further

held that scheduling the Board as a creditor in the bankruptcy petition for an estimated amount was insufficient to provide the Board with constitutionally adequate notice.

Therefore, the district court reversed the bankruptcy court's decision, and granted the Board's motion for summary judgment. Rather than remanding the case to the bankruptcy court for further proceedings, the district court entered judgment in favor of the Board. This appeal followed.

## II.

We review a district court's decision on a bankruptcy court appeal de novo. *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1145 (9th Cir. 2004). In doing so, we review the bankruptcy court's decision independently, and give no deference to the district court's determinations. *Id.* The bankruptcy court's factual findings are reviewed for clear error, and its conclusions of law are reviewed de novo. *Id.* Summary judgment is appropriate where the evidence demonstrates that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). A genuine issue of material fact exists if, viewing all the evidence in the light most favorable to the nonmoving party, a reasonable fact-finder could decide in that party's favor. *Id.*

The Joyes argue that the district court erred in entering summary judgment in favor of the Board based on the constitutional doctrine of fundamental fairness. The Board defends the district court's constitutional determination, but argues in the alternative that summary judgment should be affirmed on statutory grounds. *Downs v. Hoyt*, 232 F.3d 1031, 1036 (9th Cir. 2000) ("We may affirm on any ground supported by the record, even if it differs from the district court's rationale"). Because we must "avoid reaching constitutional questions in advance of the necessity of deciding them," we first address

the parties' statutory arguments. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).

## A.

Both the bankruptcy court and the district court concluded that the Joyes' outstanding tax liabilities for the year 2000 were discharged at the conclusion of their bankruptcy case pursuant to 11 U.S.C. § 1328(a). In so ruling, the two courts rejected the Board's argument that these outstanding taxes survived the bankruptcy court's discharge order under 11 U.S.C. § 1305. Indeed, both courts held that section 1305 was irrelevant to the determination of whether these outstanding taxes were subject to discharge. The Board disputes this conclusion, renewing its argument that section 1305 allows certain "post-petition" claims to survive a debtor's Chapter 13 discharge so long as the claimholder elects not to file a proof of claim. For their part, the Joyes appear to concede that if the outstanding taxes give rise to a post-petition claim under section 1305, the taxes would survive discharge.

We have not addressed whether section 1305 operates to protect certain claims from a bankruptcy discharge. However, we need not decide this open question of Ninth Circuit law because even if section 1305 can be read to shield certain claims from discharge, its protection extends only to "post-petition" claims, and we conclude that the Joyes' outstanding taxes cannot give rise to such a claim under section 1305. We therefore agree with the ultimate conclusions of both courts that these taxes were discharged in the Joyes' bankruptcy case.

## 1.

**[1]** Section 1305 is entitled "Filing and allowance of post-petition claims." Subsection (a) provides that "[a] proof of claim may be filed by any entity that holds a claim against a debtor . . . (1) for taxes that become payable to a governmen-

tal unit while the case is pending." 11 U.S.C. § 1305(a)(1). The parties do not dispute that the Joyes' bankruptcy case was pending from March 7, 2001 to March 4, 2004. Therefore, whether the Joyes' outstanding taxes give rise to a post-petition claim pursuant to section 1305(a)(1) depends on when these taxes became "payable" for the purpose of that section.

**[2]** We have yet to construe the term "payable" as used in section 1305(a)(1). *See In re Savaria*, 317 B.R. 395, 401 (B.A.P. 9th Cir. 2004) (recognizing, without resolving, the split in authority on the meaning of the word). However, the Court of Appeals for the Fifth Circuit and the Bankruptcy Appellate Panel for the Tenth Circuit have each addressed this issue with differing results. In *United States v. Ripley (In re Ripley)*, 926 F.2d 440 (5th Cir. 1991), the court held that "taxes that have 'become payable' are those that *must be paid* now." *Id.* at 444. In coming to this conclusion, the court stated that the word "payable" in "customary usage" means "not only '[c]apable of being paid' but also 'justly due' and 'legally enforceable.' " *Id.* at 444, quoting Black's Law Dictionary 1128 (6th ed. 1990). The court then held that "[t]he latter of these is the only reasonable meaning to be affixed to the word as it is used in section 1305." *Id.* The court appears to have based its conclusion on the fact that this construction comports with the law of commercial paper: "When a negotiable instrument is 'payable' to bearer or to order, the sum therein *must be paid* to the bearer or to the order of the person therein specified." *Id.*, citing U.C.C. §§ 3-110, 3-111. The court acknowledged, however, that the meaning of the word was not disputed by the parties. *Id.* at 444 n.14.

**[3]** In *Dixon v. IRS (In re Dixon)*, 218 B.R. 150 (B.A.P. 10th Cir. 1998), the Bankruptcy Appellate Panel for the Tenth Circuit construed the term differently. The panel construed *Ripley* as addressing "payable" in the context of "the last permissible time to pay [one's taxes] before the [given taxing authority] can commence forcible collection activities." *Id.* at

152. The panel observed, however, that "[t]he Bankruptcy Code . . . generally attempts to deal with debtors' payment obligations at an earlier time." *Id.* Reading the word "payable" in conjunction with the Bankruptcy Code's definitions for "claims" and "debts," respectively, the panel reasoned that the word is best construed to refer "to a time before the last permissible day for paying taxes." *Id.* This construction is confirmed, the panel held, by the legislative history of the Bankruptcy Code, which contains the statement, "Section 1305(a) provides for the filing of a proof of claim for taxes and other obligations *incurred* after the filing of the chapter 13 case." *Id.* at 153, quoting S. Rep. No. 95-989, at 140 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5926 (emphasis added in *Dixon*).

[4] The reasoning of the Tenth Circuit Bankruptcy Appellate Panel is persuasive. As the court in *Ripley* acknowledged, the word "payable" is susceptible to more than one interpretation. *Ripley*, 926 F.2d at 444 (stating that "payable" can mean either "capable of being paid" or "justly due" and "legally enforceable"). The panel in *Dixon* therefore correctly reviewed the statutory scheme of the Bankruptcy Code to discern Congress' intent. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) ("To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme").

[5] In that regard, the panel in *Dixon* rightly stated that Chapter 13 of the Code is generally concerned with satisfying or discharging "claims" against a given debtor. *Dixon*, 218 B.R. at 152, citing 11 U.S.C. §§ 1322, 1325 & 1328. A "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). This broad definition supports *Dixon*'s conclusion that the term "payable," which is used to define a certain

class of claims, refers to a time before the creditor's right to payment matures into a legally enforceable prerogative.

Further examination of the statutory scheme confirms this interpretation. Like section 1305(a)(1), section 502(i) of the Code also addresses tax claims held by governmental entities. This section provides that "[a] claim [for certain tax liabilities owed to governmental units] that does not arise until after the commencement of the case . . . shall be determined, and shall be allowed . . . the same as if such claims had arisen before the date of the filing of the petition." 11 U.S.C. § 502(i). Reconciling section 502(i) with section 1305(a)(1), Collier on Bankruptcy concludes that the "taxes covered by [section 502(i)] are those which are *incurred* prepetition that do not come due until after the petition is filed. If a tax is *incurred* postpetition, it can be treated . . . only as a postpetition claim under section 1305." 8 Collier on Bankruptcy ¶ 1300.71[10] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (emphasis added); *see also In re Flores*, 270 B.R. 203, 208 (Bankr. S.D. Tex. 2001) (holding that a post-petition claim under section 1305 "is a liability that *arises* postpetition and relates only to postpetition activity") (emphasis added); 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 302.1, at 302-1 (3d ed. 2000 & 2004 Supp.) ("Section 1305 deals only with debts that *arise* after the petition") (emphasis added). Therefore, only taxes incurred post-petition may be treated as post-petition claims under section 1305(a).[1]

---

[1]The dissent faults us for "equat[ing]" section 1305 with section 502(i) because the former refers to "taxes that become payable," whereas the latter refers to a "claim" that "arise[s]." However, the phrase "taxes that become payable" in section 1305 defines one type of post-petition "claim," so the two provisions are more alike than the dissent asserts. 28 U.S.C. § 1305(a). Furthermore, our reliance on "scholarly interpretations," which harmonize these two provisions, is but a straightforward application of the well-established canon of statutory interpretation *in pari materia*, that similar provisions in the same statute should be interpreted in a similar manner unless legislative history or purpose suggests material differences. *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972).

Moreover, as stated in *Dixon*, the legislative history of the Bankruptcy Code indicates that section 1305(a) was meant to address taxes "*incurred* after the filing of the chapter 13 case." *Dixon*, 218 B.R. at 153, quoting S. Rep. No. 95-989, at 140 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5926 (emphasis added in *Dixon*). Although resort to legislative history is generally discouraged in statutory construction and certainly unnecessary where the meaning of a statute is plain, we have the option of turning to it for insight into congressional intent where, as here, the statutory language is ambiguous. *Daas*, 198 F.3d at 1174 ("If the statute is ambiguous — and only then — courts may look to its legislative history for evidence of congressional intent").

**[6]** Reviewing the statutory scheme of the Bankruptcy Code and the relevant legislative history, we conclude that Congress meant section 1305(a)(1) to refer to taxes that were incurred by the debtor during the pendency of the debtor's bankruptcy case. We would frustrate this congressional intent were we to construe the word "payable" to refer to only those taxes that have become "legally enforceable" or "justly due." *Ripley*, 926 F.2d at 444. Rather, as the court in *Ripley* stated, payable can also describe amounts that are simply "capable of being paid." *Id.*; *see also* Black's Law Dictionary (8th ed. 2004) ("An amount may be payable without being due. Debts are commonly payable long before they fall due"). This construction of "payable" better comports with Congress' intent to cover a debtor's tax liability at a time prior to the point when that liability becomes legally actionable.[2] Therefore,

---

[2]The dissent argues that the narrower definition of "payable" more accurately reflects congressional intent because it would enable tax collection in this case, whereas the broader definition we adopt prevents collection. However, as discussed above, the relevant statutory scheme and legislative history of section 1305 evince a specific congressional intent to allow post-petition claims for those tax obligations that were incurred while a bankruptcy petition is pending. To take the dissent's approach would be to ignore this legislative directive in favor of a general congressional preference for tax collection, unmoored from the particular provision at issue.

because "[t]he purpose of statutory construction is to discern the intent of Congress," *Daas*, 198 F.3d at 1174, we hold that taxes become "payable" for purposes of section 1305(a)(1) when they are capable of being paid.[3]

**[7]** Applying this construction here, we hold that the Joyes' outstanding state taxes for the year 2000 cannot give rise to a post-petition claim pursuant to section 1305(a)(1). Under California law, personal taxes are calculated based on the given taxpayer's income earned "for each taxable year." Cal. Rev. & Tax. Code § 17041(a)(1). A "taxable year" is in turn defined as a calendar year. Cal. Rev. & Tax. Code § 17010. Thus, the Joyes could have technically determined and paid their year 2000 taxes on the day after the close of the corresponding calendar year. Although the Joyes were not required to pay these taxes until April 15, 2001 (or at the latest October 15, 2001), their tax liability to the state for the year 2000 was nonetheless capable of being paid, and thus payable, as of January 1, 2001.

**[8]** Because this date fell prior to the date the Joyes filed their bankruptcy petition on March 7, 2001, these taxes cannot give rise to a post-petition claim under section 1305(a)(1). Therefore, even if section 1305 shields post-petition claims from discharge (which we do not decide), it would not operate to protect the Board's claim to the Joyes' outstanding taxes from discharge. These taxes were thus properly discharged at the conclusion of Joyes' bankruptcy case.[4]

---

[3]We acknowledge that our decision creates a circuit split with the Fifth Circuit. Respectfully, however, we are not bound by its decision. To the extent that the dissent argues that we are also not bound by the Tenth Circuit Bankruptcy Appellate Panel's decision in *Dixon*, we agree. Nonetheless, we conclude that the bankruptcy panel's analysis is persuasive, and adopt its interpretation as our own for the reasons discussed in this opinion.

[4]The dissent argues that our holding "assumes that a taxpayer can do nothing to alter her tax obligations between January 1 and April 15." But

## 2.

The Board presents an array of internally inconsistent, and ultimately unsuccessful, arguments against adopting the broader definition of "become payable" suggested in *Dixon*. First, the Board appears to argue that the Ninth Circuit has adopted the "same analysis [as *Ripley*] to determine when taxes become payable." On this point, the Board mentions that it believes that *Ripley* interprets "payable" under the Internal Revenue Code. Yet, later in the Board's brief, the Board attempts to distinguish *Dixon* on the same grounds, arguing that, "[i]n this case, the issue is not when taxes 'become payable' *under the Internal Revenue Code*, but when they 'become payable' under the California [Revenue and Tax Code]."

To the extent that the Board argues that cases interpreting "payable" under the Internal Revenue Code are not particularly instructive, we agree. As aptly stated in *Dixon*, "words used in the Bankruptcy Code do not necessarily mean the same thing they might mean in the Internal Revenue Code." *Dixon*, 218 B.R. at 152. And as described earlier, there are ample clues provided by the plain language, statutory scheme, and legislative history of section 1305 for us to divine congressional intent without recourse to interpretations of a wholly different statute. *See, e.g.*, *Sherman v. United States Parole Comm'n*, 502 F.3d 869, 874-78 (9th Cir. 2007) (declining to adopt the interpretation of a certain statute provided in a prior case, in construing a similar phrase used in a different statute, because the prior case "dealt with an

we assume nothing of the sort. There may be a case where, as the dissent describes, "[a] taxpayer . . . contribute[s] to an Individual Retirement Account ("IRA") between January 1 and April 15, 2009, and deduct[s] that contribution from her 2008 income when she files her 2008 tax return." That case, however, is not before us. There is no evidence, or even allegation, that the Joyes engaged in transactions, which significantly altered their year 2000 tax liability after the close of the tax year.

entirely separate statutory scheme"); *accord United States ex rel. Chicago, New York & Boston Refrigerator Co. v. Interstate Commerce Comm'n*, 265 U.S. 292, 295 (1924) ("[B]ecause words used in one statute have a particular meaning they do not necessarily denote an identical meaning when used in another and different statute").

For similar reasons, we also reject the Board's argument that "payable" under section 1305(a)(1) should be construed by reference to the California Revenue and Tax Code. On this issue, the Board confuses the substantive determination to be made under section 1305(a)(1) with the task of construing the statutory provision in the first instance. True, under *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000), "the 'basic federal rule' in bankruptcy is that state law governs the substance of claims." *Id.*, quoting *Butner v. United States*, 440 U.S. 48, 57 (1979). However, before we can determine whether the Joyes' outstanding taxes became payable under California law during the pendency of their bankruptcy case, we must first decide what the Bankruptcy Code means by the term "payable" in section 1305(a)(1). For that initial determination, we rely on the traditional canons of statutory interpretation, not the substantive tax law of California.

The Board also suggests that this circuit in *Pan American Van Lines v. United States*, 607 F.2d 1299 (9th Cir. 1979) has already determined that "payable" refers to the tax return deadline. We do not agree. In that case, the court determined "whether taxpayer's liability for the restricted interest was 'legally due and owing['] within three years preceding bankruptcy" under Section 17(a) of the Bankruptcy Act. *Id.* at 1301. Thus, *Pan American* interpreted a completely different statutory provision than the one at issue here, and in no way speaks to the interpretation of the term payable under section 1305(a)(1). To the extent that the Ninth Circuit Bankruptcy Appellate Panel in *Savaria* held that *Pan American Van Lines* stands for the proposition that taxes "become payable when

the final tax return for the tax year is required to be filed," we disagree with the panel. *Savaria*, 317 B.R. at 401.

The other cases relied on by the Board are also unhelpful. In *Schatz v. Franchise Tax Board*, 81 Cal. Rptr. 2d 719 (Cal. Ct. App. 1999), a case also relied upon by the dissent, the court held that a state income tax *deficiency* is "assessed" for the purposes of federal bankruptcy laws "when the assessment contained in a notice of proposed deficiency assessment becomes final." *Id.* at 720. *Schatz* did not, however, address when taxes become "payable" under California law for purposes of section 1305(a)(1). The tax return deadline may be the "date when the State formally act[s] to finally fix the tax deficiencies for those years," but that does not preclude the conclusion that the taxes owed are capable of being paid at a point before the State's formal action. *Id.* at 724.

The same reasoning distinguishes *Franchise Tax Board v. Bracey (In re Bracey)*, 77 F.3d 294 (9th Cir. 1996). Like *Schatz*, this case dealt with the issue of when a tax deficiency is "assessed" under California law for purposes of rendering the assessment nondischargeable in federal bankruptcy proceedings. *Id.* at 295. The moment when a tax deficiency assessment becomes final is plainly different than when income taxes become payable for purposes of section 1305(a)(1).

For these reasons, we disagree with the Board's argument that the Joyes' outstanding taxes "became payable" on the date their state tax return was due. As described above, those taxes "became payable" at the close of the year 2000 taxable year. Because the date the taxes became payable fell before the date the Joyes filed their bankruptcy petition, the taxes were properly discharged in their bankruptcy case.

## B.

**[9]** Having concluded that the Board is not entitled to summary judgment on statutory grounds, we are now required to

address the parties' constitutional arguments. We must decide whether barring the Board from collecting the Joyes' outstanding taxes would constitute a denial of fundamental fairness in state proceedings guaranteed by the Constitution. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), the Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296-97 (1953), the Court extended this constitutional guarantee to governmental entities.

**[10]** We assessed the constitutional adequacy of the official notice provided in bankruptcy proceedings in *Matter of Gregory*, 705 F.2d 1118 (9th Cir. 1983). There, a creditor argued that its claim in bankruptcy should not be discharged because it had received inadequate notice of the debtor's bankruptcy plan. *Id.* at 1120. It was undisputed, however, that the creditor had received official notice of the bankruptcy case and the scheduled meeting of creditors. *Id.* We rejected the creditor's constitutional challenge, holding that "[w]hen the holder of a large, unsecured claim [in bankruptcy] . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Id.* at 1123. We added that "[i]f [the creditor] had made any inquiry following receipt of the notice, it would have discovered that it needed to act to protect its interest." *Id.*; *see also Espinosa v. United Student Aid Funds, Inc.*, 545 F.3d 1113, 1122 (9th Cir.), *amended by* 553 F.3d 1193 (2008) (holding that *Gregory* is "entirely consistent with *Mullane* and the more than a half century of due process caselaw that follows it").

**[11]** *Gregory* controls here. The Joyes filed their bankruptcy petition on March 7, 2001. The petition scheduled the

Board as a priority creditor in the estimated amount of $10,000. The bankruptcy court then sent the Board official notice of the petition. The notice indicated that the meeting of creditors would be held on April 19, 2001, and that the claims bar date for governmental claims was September 3, 2001. The parties do not dispute that this notice complied with the requirements of the Bankruptcy Code. Moreover, the Board does not contend that it did not receive this official notice. Therefore, like the creditor in *Gregory*, the Board received constitutionally adequate notice of its right to payment — in the form of the official notice mandated by the Bankruptcy Code — and it ignored the Joyes' bankruptcy proceeding "at its peril." *Gregory*, 705 F.2d at 1123.

The Board argues that even though it received this official notice, it could not determine the Joyes' actual tax liability until after October 15, 2001 because California's income tax system relies on taxpayers to assess how much they owe and inform the Board of that amount through a tax return. But this does not change the fact that the Board received actual notice of the Joyes' bankruptcy petition, which had scheduled the Board as a priority creditor for an estimated $10,000. Although this estimate was below the actual amount owed, the estimate certainly put the Board on notice that it may be entitled to some amount of payment from the Joyes' Chapter 13 estate. *Cf. In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1431 (9th Cir. 1990) (holding that an unscheduled creditor had constitutionally adequate notice of the bankruptcy proceedings because it had sufficient information to evaluate whether to participate in the case and protect its interests); *In re Kragness*, 82 B.R. 553, 555 (Bankr. D. Or. 1988) (holding that "the operative fact is whether or not the creditor has notice of the debtor's bankruptcy proceeding in time to file a timely proof of claim").

[12] Moreover, as the Joyes correctly point out, if the Board had doubts about the tax estimate, it could have either requested an extension of time in which to file a claim, or

filed an estimated claim in any amount, and then sought an amendment of that claim prior to the distribution. *See, e.g.*, *Lompa v. Price (In re Price)*, 871 F.2d 97, 99 (9th Cir. 1989) (holding that a creditor who had received actual notice of a bankruptcy proceeding through his counsel did not suffer a due process violation because he had notice "in time to file a complaint, or at least to file a timely motion for an extension of time"). Yet the Board does not explain why it did not inquire further into the Joyes' bankruptcy proceeding. Instead, the Board argues that the Joyes should not be allowed to "game" the system by setting the claims bar date before the date on which they are required to file their tax returns. However, there is no evidence of bad faith on the Joyes' part; it is undisputed that the Joyes were legally entitled to file their tax returns on October 15.

Our decision in *Manufacturers Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848 (9th Cir. 1992) does not alter our conclusion. In that case, we ruled that a creditor did not receive adequate notice because the debtor negligently listed an incorrect address for the debtor in her bankruptcy plan. *Id.* at 849. The creditor therefore "did not receive any notice from the court regarding" the claim schedules in bankruptcy. *Id.* The case before us is wholly distinguishable. As described above, no one disputes that the Board received actual notice of the Joyes' bankruptcy case. Moreover, there is no evidence that the Joyes acted negligently in filing their tax returns after the claims bar date.

Similarly, *Ellett v. Stanislaus*, 506 F.3d 774 (9th Cir. 2007) is of no help to the Board. In that case, we held that a taxing authority did not receive adequate notice of the debtor's Chapter 13 bankruptcy because the debtor provided an incorrect social security number in his bankruptcy filings. *Id.* at 781. Although we observed that the burden of providing adequate notice is generally on the debtor, our decision in that case turned on the fact that the debtor provided "incorrect identifying information" to the tax authority. *Id.* We held that

"*due to [the debtor's] negligence* in listing an erroneous [social security number] on his bankruptcy petition and section 341(a) notice, proper notice was not provided to the [taxing authority]." *Id.* (emphasis added). In this case, it is undisputed that the Joyes provided their correct social security numbers in their bankruptcy filings. The Board nevertheless argues that it did not have the Joyes' social security numbers in its own records prior to the tax return deadline. But *Ellett* does not stand for the proposition that the bankruptcy court's official notice is constitutionally inadequate simply because the creditor's records are incomplete through no fault of the debtor.

**[13]** Finally, we address the district court's observation that recent amendments to the Bankruptcy Code evidence Congress' concern that situations like this case "could result in the denial of fundamental fairness to taxing authorities." These amendments were enacted in 2005, and were therefore inapplicable at the time the Joyes filed their bankruptcy petition. In *Gardenhire v. IRS (In re Gardenhire)*, 209 F.3d 1145, 1148 (9th Cir. 2000), we held that "[c]lose adherence to the text of the relevant statutory provisions and rules is especially appropriate in a highly statutory area such as bankruptcy." We heed that advice here. As described above, the official notice provided to the Board complied with all the requirements of the Bankruptcy Code as enacted at the time. The Board has not provided adequate reason to disregard the clear import of the statutory scheme on the otherwise equitable grounds of fundamental fairness.

## III.

In conclusion, we hold that the Joyes' outstanding taxes for the year 2000 were properly discharged pursuant to 11 U.S.C. § 1328(a). Those taxes do not give rise to a post-petition claim under 11 U.S.C. § 1305(a)(1); therefore, the Board cannot rely on that provision to save its claim to these taxes from discharge. We also hold that the Board received constitution-

ally adequate notice of its right to payment on these outstanding taxes. Thus, barring the Board from collecting these taxes would not constitute a denial of fundamental fairness.

We acknowledge that the Board has the unenviable task of maintaining complete and accurate records for the millions of taxpayers in the State of California. But we are not at liberty to rework the Bankruptcy Code in order to lighten its burden. The Joyes did all that was required of them to provide the Board with notice of their tax liabilities. Accordingly, we reverse the summary judgment of the district court, and remand this case for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

Shelli Renee and Teresa M. Joye concede that, if their outstanding taxes for 2000 gave rise to a *post-petition* claim, the taxes would survive their discharge in bankruptcy. Under 11 U.S.C. § 1305(a)(1), the government may file a proof of claim "for taxes that become payable to a governmental unit while the case is pending." The question, then, is whether the taxes in this case "bec[a]me payable" while the Joyes' bankruptcy case was pending.

As the majority acknowledges, the term "payable" in this statute is ambiguous. *See* maj. op. at 11513-16. "Payable" could mean "calculable" or "fixed," or it could mean "must be paid now" or "legally enforceable." I would read it, as did the Fifth Circuit, to mean "must be paid now" or "legally enforceable." *United States v. Ripley (In re Ripley)*, 926 F.2d 440, 444 (5th Cir. 1991). As the *Ripley* court explained, Black's Law Dictionary states that a sum of money normally

is said to be "payable" when a person is obliged to discharge the debt at once. *Id.* So read, the statute entitles the Franchise Tax Board to collect taxes from the Joyes for the year 2000 because the taxes became payable ("must be paid now" or "legally enforceable") on April 15, 2001; the Joyes had filed their bankruptcy case on March 7, 2001, and their bankruptcy case remained pending on April 15, 2001. I come to this interpretation for four main reasons.

First, the fundamental purpose of this particular subsection is to permit governmental units to collect taxes as part of a bankruptcy plan. The Bankruptcy Code is concerned primarily with pre-petition debts, as a bankruptcy plan attempts to release the debtor "from pre-petition debts so that she can be given a 'fresh start.' " *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026 (9th Cir. 2005). Claims that arise after the filing of the bankruptcy petition, or post-petition claims, generally are not part of the bankruptcy case (though they may be collected outside the bankruptcy proceedings). 8 *Collier on Bankruptcy* ¶ 1305.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). But Congress has crafted a few statutory exceptions to that rule, one of which is relevant here. In enacting 11 U.S.C. § 1305, titled "Filing and allowance of postpetition claims," Congress allowed a governmental unit to which taxes "become payable" while a bankruptcy case is pending to file an otherwise impermissible post-petition claim with the bankruptcy court, *id.* § 1305(a)(1).

Our task in construing a statute is to discern congressional intent. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990). To do so, we "look to the provisions of the whole law, and to its object and policy." *Id.* (internal quotation marks omitted). That Congress chose to allow governmental units to participate in bankruptcy proceedings as creditors—even as to claims that ordinarily would have to be collected separately—manifestly evinces a strong intent to allow for collection of taxes as part of the bankruptcy plan. If one plau-

sible reading cuts off tax liability, while another does not, we should adopt the reading that comports with Congress' overall intent.

The majority opinion is also flawed because it equates § 1305(a)(1) with § 502(i), maj. op. at 11516, even though those sections employ substantially different formulations. Section 1305(a)(1) pertains to "taxes that become payable," while § 502(i) refers to a "claim" that "arise[s]." A "claim" is not the same as "taxes," and a claim for taxes may "arise" before it "become[s] payable." When interpreting statutes, we presume that Congress meant to convey different concepts when it used different words. *See, e.g.*, *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."). The majority therefore errs in concluding, because of the text and scholarly interpretations *of § 502(i)*, that only taxes incurred post-petition may be treated as post-petition claims *under § 1305(a). See* maj. op. at 11516.

Second, because of the importance of national uniformity in administering the Bankruptcy Code, we should interpret § 1305(a), if possible, the same way as our sister circuits have interpreted it. As noted, the Fifth Circuit reads the statute as I do.

The majority relies heavily on a Bankruptcy Appellate Panel ("BAP") case from the Tenth Circuit, *Dixon v. IRS (In re Dixon)*, 218 B.R. 150 (B.A.P. 10th Cir. 1998). Maj. op. at 11514-16. But there has been no circuit split until today. Only the Fifth Circuit has ruled on what "payable" means in § 1305(a)(1). A BAP opinion is equivalent only to an opinion from a federal district court in another circuit. The Tenth Circuit's BAP (like our own Ninth Circuit BAP) consists of a group of non-Article III judges appointed by a federal circuit court to hear appeals from the bankruptcy courts. In circuits

that do not have BAPs, bankruptcy court decisions are appealed to federal district courts. *See* 28 U.S.C. § 158(a). We should not, therefore, give the Tenth Circuit's BAP decision any more weight than that of a district court from another circuit. *Cf. Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 772 n.10 (9th Cir. 2008) ("BAP opinions are not binding on this court . . . ."); *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) (declining to rule on the authoritative effect of a BAP decision, but noting that "BAP decisions cannot bind the district [and circuit] courts themselves. As article III courts, the district [and circuit] courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction."). To the extent that the question is one of federal law, if it is reasonable to do so we should harmonize our holding with that of the Fifth Circuit, which is the only other federal court of appeals to have decided the question before us.[1]

Third, the majority's view assumes that a taxpayer can do nothing to alter her tax obligations between January 1 and April 15. That assumption is not accurate. A taxpayer may, for example, contribute to an Individual Retirement Account ("IRA") between January 1 and April 15, 2009, and deduct that contribution from her 2008 income when she files her 2008 tax return, as long as she specifies that the contribution is to be attributed to 2008. *See* 26 U.S.C. § 219(a), (f)(3) (noting that deductible contributions can be made up to the date the tax return is due); State of California Franchise Tax Board Publication 1005, *Pension and Annuity Guidelines* 4 ("The California Treatment of IRAs is generally the same as the federal treatment."). So her tax liability cannot be truly "fixed" or "calculable" until April 15, because she can alter her income (for tax purposes) until that date each year.

---

[1]Moreover, in *Dixon*, the agency *conceded* that the claim was prepetition. 218 B.R. at 151. That concession was key to the court's holding that the taxes became payable at the close of the tax year. There is no such concession here.

Fourth, as the majority recognizes, we turn to state law to determine whether the Joyes' taxes became payable under California law during the pendency of their bankruptcy case. Maj. op. at 11520; *see Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims . . . ." (citation omitted)). California's Revenue and Taxation Code governs the Joyes' obligations to the Franchise Tax Board. Section 19001 of the California code provides that taxes "shall be paid at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return)." Under that text, "the time . . . fixed for filing the return" in the absence of an extension of time for filing the return is April 15. Even if the tax is capable of calculation on January 1, the Franchise Tax Board would have no authority under state law to initiate a collection action before April 15. At least one California appellate case supports this interpretation as well. In *Schatz v. Franchise Tax Board*, 81 Cal. Rptr. 2d 719, 724 (Ct. App. 1999), the California Court of Appeal concluded that the date on which the Franchise Tax Board accepts a return is the "date when the State formally act[s] to finally fix the tax." Thus, to the extent that the question here pertains to the substance of the tax claim and thus to California law, the Franchise Tax Board's proposed interpretation is more persuasive. The Joyes filed for bankruptcy on March 7, 2001; the taxes became payable on April 15, 2001, during the pendency of the bankruptcy proceeding.

For these reasons, I would hold that, under 11 U.S.C. § 1305(a)(1), the Joyes' 2000 taxes were post-petition. Accordingly, I would affirm the decision of the district court.