**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT WAGGY,
          *Plaintiff-Appellant,*

v.

SPOKANE COUNTY WASHINGTON;
STEVE TUCKER; KELLY FITZGERALD,
          *Defendants-Appellees.*

No. 09-35133

D.C. No.
2:07-cv-00264-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, District Judge, Presiding

Argued and Submitted
December 10, 2009—Seattle, Washington

Filed February 5, 2010

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Tallman

---

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

2113

**COUNSEL**

Richard D. Wall, P.S., Spokane, Washington, for the plaintiff-apellant.

Hugh T. Lackie, Heather C. Yakely (argued), Evans, Craven & Lackie, P.S., Spokane, Washington, for the defendants-appellees.

**OPINION**

TALLMAN, Circuit Judge:

Plaintiff-Appellant Robert Mark Waggy ("Waggy"), a convicted sex offender, was arrested on harassment charges while serving part of his original sentence on community placement in Spokane, Washington. The day after he posted bond and was released, he was again arrested pursuant to a bench warrant issued due to his failure to progress in his court-imposed sexual deviancy treatment program. Based on this latter arrest for violation of his required supervision, he brought suit under 42 U.S.C. § 1983, claiming that the Spokane County prosecuting attorneys and the county violated his constitutional right to be free from arrest without probable cause. The district judge awarded absolute immunity to the deputy prosecuting attorney and found that the plaintiff had failed to allege sufficient facts to warrant trial against the county. We affirm.

**I**

On September 29, 2000, Waggy pled guilty to Third Degree Rape of a Child and Second Degree Child Molestation. He was sentenced to 41 months of incarceration and an additional 36 months of community placement supervision following his release from prison. As a condition of his supervised placement, Waggy was ordered to attend a sexual devi-

ancy treatment program, which progressed from individual counseling sessions to peer support group classes once per week. Though he affirmatively took responsibility for the actions leading to his conviction, Waggy's statements during his counseling sessions evinced a fixation on having his children returned to his custody while he continually blamed others for the separation from his children.

During his group counseling session on March 19, 2004, Waggy informed his counselor that if his children were not returned to him by April 20, 2004, he planned to kill John Traylor ("Traylor"), a Washington Department of Social and Health Services ("DSHS") caseworker, whom Waggy blamed for removing his children from his custody. Waggy also stated his intent to conduct a shooting rampage at a local elementary school and made references to the upcoming anniversary of the massacre at Columbine High School in Colorado. Pursuant to statutory reporting obligations, Waggy's counselor divulged these statements to Waggy's Community Corrections Officer and to a supervisor at the Department of Corrections. The supervising corrections officer visited Waggy's home to investigate the reported threats and then imposed additional conditions on Waggy's community placement. Under these new conditions, Waggy was (1) prohibited from having contact with Traylor, (2) ordered to remain no less than two blocks away from the DSHS building in Spokane where Traylor worked, and (3) required to obey all laws.

Spokane Police Department Detective Jeffrey Holy ("Detective Holy") was assigned to investigate Waggy's threats against Traylor. On April 16, 2004, Detective Holy drafted a report detailing his investigation into Waggy's criminal threats. The detective also completed a charging sheet, affidavit of probable cause, and a request for issuance of a prosecutor's complaint and arrest warrant. The documentation was forwarded to Spokane County Deputy Prosecuting Attorney Kelly Fitzgerald ("DPA Fitzgerald"), the prosecutor han-

dling matters dealing with Waggy's prosecution and community placement.

On April 19, 2004, the day before the actions he threatened were to commence, Waggy was arrested on one count of Felony Harassment. He posted bond later that day and was released. Then, on April 20—the fourth anniversary of the Columbine shootings—Todd Wiggs, a supervisor at the Department of Corrections, had a telephone conversation with DPA Fitzgerald where they discussed that Waggy's behavior and subsequent arrest could constitute a violation of the terms of his supervision. In his deposition, Wiggs testified that he and DPA Fitzgerald determined it would be best to secure Waggy in police custody as soon as possible based on the violent threats he was making and because he had failed to make progress in his deviancy treatment program.

DPA Fitzgerald submitted a request for a bench warrant, attaching an order and a motion for an arrest warrant, as well as the same affidavit of facts Detective Holy had submitted on the harassment charge two days prior. A Spokane County Superior Court judge issued a warrant for Waggy's failure to make satisfactory progress in his sexual deviancy treatment program and Waggy was arrested that same day. He was held in the Spokane County Jail for 67 days, at which time he was placed on electronic home monitoring. He was released from this monitoring around August 20, 2004.

Waggy then brought this civil rights action in the Eastern District of Washington under 42 U.S.C. § 1983 against Spokane County, Spokane County Prosecutor Steve Tucker ("Tucker"), and DPA Kelly Fitzgerald. He claimed civil rights violations stemming from false arrest and imprisonment under state law, a violation of his due process rights, and respondeat superior liability against the county. The complaint also alleged a failure by Tucker in his official capacity to adequately train and supervise DPA Fitzgerald in the perfor-

mance of her duties as a prosecuting attorney.[1] District Judge Fred Van Sickle granted summary judgment to all defendants, holding that DPA Fitzgerald was entitled to absolute immunity, and that Waggy had failed to point to any evidence that the county either had an unconstitutional policy or practice, or that it had failed to properly train DPA Fitzgerald. Waggy then timely appealed.

## II

Waggy presents three claims. First, he alleges that Judge Van Sickle improperly granted absolute prosecutorial immunity to DPA Fitzgerald, shielding her from liability. Second, he argues that the county maintained a constitutionally impermissible practice of securing bench warrants against persons under supervision. Finally, he contends that even if the policy was facially valid, Spokane County failed to adequately train and supervise its prosecutors in such a way that they might not violate his civil rights.

We have jurisdiction to review a district court's grant of summary judgment under 28 U.S.C. § 1291, and our review is *de novo*. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 896 (9th Cir. 2008). In doing so, we view the evidence in the light most favorable to Waggy, the non-moving party. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009). A grant of summary judgment is inappropriate if there is "any genuine issue of material fact or the district court incorrectly applied the substantive law." *Blankenhorn v. City of Orange*, 485

---

[1]While Waggy brought this claim against Prosecuting Attorney Tucker in the district court, it appears either that he has abandoned this argument on appeal, *see* Fed. R. App. P. 28(a)(5) & (a)(9)(A); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992), or that it has been subsumed into his claim against the county. Nothing in the briefing before us indicates that Waggy has brought the same claim against Tucker on appeal, though Tucker remains listed as a party. To avoid any uncertainty, we affirm summary judgment in favor of Tucker as well.

F.3d 463, 470 (9th Cir. 2007). After reviewing the record before us and the district court's legal conclusions, we affirm.

**A**

**[1]** We first examine whether DPA Fitzgerald was entitled to absolute immunity because she was acting as a criminal prosecutor when she secured a warrant for Waggy's arrest. "A state prosecuting attorney enjoys absolute immunity from liability under § 1983 for [her] conduct in 'pursuing a criminal prosecution' insofar as [s]he acts within [her] role as an 'advocate for the State' and [her] actions are 'intimately associated with the judicial phase of the criminal process.' " *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976)). However, prosecutors are entitled to only qualified immunity "when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives." *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th Cir. 2009) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). The burden rests on the prosecutor to show that she is entitled to absolute immunity. *Id.*

"As the Supreme Court has acknowledged, the distinction between the roles of 'prosecutor' and 'investigator' is not always clear." *Id.*; *see also Imbler*, 424 U.S. at 431 n.33 ("Drawing a proper line between these functions may present difficult questions . . . ."). "To determine whether an action is judicial, investigative, or administrative, we look at 'the nature of the function performed, not the identity of the actor who performed it.' " *Cousins*, 568 F.3d at 1068 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). We explained further in *al-Kidd*:

> While the "duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," absolute prosecutorial immunity will

be given "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct."

580 F.3d at 958 (internal citations omitted).

[2] The Supreme Court has held that absolute immunity protects a prosecutor who is appearing in court in support of a warrant application, presenting evidence at a hearing, or preparing for either the initiation of judicial proceedings or trial. *Van de Kamp v. Goldstein*, 129 S. Ct. 855, 861 (2009); *Kalina*, 522 U.S. at 125. However, a prosecutor sheds absolute immunity when she acts as a "complaining witness" by certifying that the facts alleged within an affidavit are true. *Kalina*, 522 U.S. at 132 (Scalia, J., concurring). The analysis is conducted on a "function-by-function basis," *al-Kidd*, 580 F.3d at 959, and the question turns on whether the court at common law would have provided protection for the specific prosecutorial function, *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc) (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993)).

Here, Waggy alleges that DPA Fitzgerald was not acting in a judicial capacity when she sought a bench warrant for his arrest following a probation violation. Instead, he argues that she was transformed into a "complaining witness" by attesting to facts in support of the bench warrant. He likens the factual scenario in the instant case to that presented to the Supreme Court in *Kalina*.

In *Kalina*, the Court refused to shield the deputy prosecutor from liability under a theory of absolute immunity. 522 U.S. at 131. To satisfy a state requirement that an arrest warrant be supported by either an affidavit or sworn testimony, Kalina, the deputy prosecuting attorney, had submitted a "Certification for Determination of Probable Cause," which summarized the evidence in support of a burglary charge. *Id.* at 121. DPA Kalina went on to personally vouch, under penalty of

perjury, for the veracity of the statements contained within the certification. *Id.* After the superior court found that probable cause existed and had issued an arrest warrant, it came to light that Kalina's certification contained factual inaccuracies. *Id.*

The Supreme Court compared Kalina's certification under penalty of perjury to statements that might be made by "any competent witness." *Id.* at 129-30. The function of the complaining witness was not protected by absolute immunity at common law. *Id.* at 127. It was instead "the generally accepted rule . . . that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made . . . without probable cause." *Id.* at 127 n.14 (quoting *Malley v. Briggs*, 475 U.S. 335, 340-341 (1986) (footnote omitted)). The Court concluded that "[t]estifying about facts is the function of the witness, not of the lawyer," and therefore any person who makes such statements is not entitled to absolute immunity. *Id.* at 130-31. It did not matter what title that person held.

Waggy points to the documents DPA Fitzgerald submitted in support of the warrant application to prove that she was acting outside her role as a judicial advocate and that she instead became the functional equivalent of a complaining witness. DPA Fitzgerald's application for a bench warrant to arrest Waggy included: (1) a motion and order requesting that a bench warrant issue; (2) the supporting Affidavit of Facts completed by Detective Holy for the felony harassment charge; (3) an additional follow-up report from Detective Holy dated April 16, 2004; and (4) a report from the Department of Corrections to the presiding judge regarding the court's specially-imposed conditions as of March 31, 2004. Waggy argues that the only documentation attesting to his supervision violation is DPA Fitzgerald's motion and order. He claims that the remaining documents are devoid of any indication that he violated the terms of his restrictions. This, he says, is evidence that DPA Fitzgerald's actions were not that of a lawyer, but instead those of a complaining witness.

However, Waggy is mistaken and his reliance on *Kalina* misplaced. We think this case is more akin to *Tanner v. Heise*, 879 F.2d 572, 578 (9th Cir. 1989), where the plaintiff, Steve Tanner, alleged that the prosecutor for the City of Bonners Ferry, Idaho, had conspired with a local magistrate judge to issue an invalid bench warrant for his arrest. The district court granted the prosecutor absolute immunity because he was "acting in a judicial or quasi-judicial capacity" when he sought the bench warrant. *Id.* (quoting *Tanner v. Heise*, 672 F. Supp. 1356, 1359 (D. Idaho 1987), *rev'd on other grounds*, 879 F.2d 572 (9th Cir. 1989) (citation omitted)). We agreed, holding that the prosecutor acted within his authority because, under the facts as alleged by Tanner, the prosecutor was essentially being sued for instituting a prosecution. *Id.*

**[3]** Contrary to Waggy's assertion, DPA Fitzgerald's motion for a bench warrant essentially constituted the initiation of new judicial proceedings against him for violating the terms of his community placement, and was not an investigative act undertaken by DPA Fitzgerald. The motion explicitly states that it "is based upon the records and files" attached as exhibits. It explains to the court how Waggy violated the terms of his supervision and directs the judge to the attached documents as evidence of the supporting facts. While it is true that DPA Fitzgerald was the only person to argue that the facts alleged by Detective Holy constituted a violation of Waggy's conditions of supervision as directed by the Department of Corrections and the sentencing court, her actions were those of an attorney and not of a sworn witness. Presenting a motion which states the law and attaching affidavits averring to the facts "clearly involve[s] the prosecutor's 'role as advocate for the State,' rather than [her] role as 'administrator or investigative officer." *Burns v. Reed*, 500 U.S. 478, 491 (1991) (quoting *Imbler*, 424 U.S. at 430-31). Further, the act of procuring a bench warrant is one "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, as it is normally part of the initiation of criminal

proceedings, *see Sweat v. Arkansas*, 469 U.S. 1172, 1177 (1985) (Brennan, J., dissenting from denial of certiorari).

**[4]** Therefore, we conclude that where a prosecutor submits a motion for a bench warrant to the court applying the law to facts alleged in supporting affidavits signed by witnesses, she is acting not in an investigative capacity, but instead as a judicial advocate before the court. This entitles her to absolute prosecutorial immunity from suit for civil rights claims arising from the discharge of her duties.

## B

**[5]** We turn next to Waggy's two claims against Spokane County. Municipalities are considered "persons" under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "[I]t is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690). A policy has been defined as "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (additional citations omitted).

**[6]** It is well established in our precedent that "[a] policy can be one of action or inaction." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Both types of claims require that the plaintiff prove a constitutional violation. 42 U.S.C. § 1983; *see also Long*, 442 F.3d at 1186 ("To impose liability against a county for its failure to act, a plaintiff must show . . . that a county employee violated the plaintiff's constitutional rights . . . ."); *Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991) ("In order to establish [plaintiff's] right to proceed to trial on his municipal liability claim, the court must first determine that a constitutional violation has

occurred . . . ."). Additionally, in order to prove that an "action" policy is unconstitutional, the claimant "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a municipal policymaker possessed with final authority to establish that policy." *Erdman*, 926 F.2d at 882. Under an "inaction" policy claim, "a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees." *Long*, 442 F.3d at 1185. In *Canton*, the Supreme Court held that a municipality's failure to train its employees is one such claim of omission or inaction by the municipality. 489 U.S. at 392.

**[7]** Waggy asserts a claim under each type of policy. First, he argues that Spokane County had a constitutionally impermissible policy, practice, or custom that was violative of his rights. However, as the district court properly held, he failed to allege any facts supporting this claim. He points us to no express county policy or custom, and he provides no evidence showing even an inference that such a procedure exists. Because he has created no genuine issue of material fact as to the county's policies, practices, or customs, we hold that the district court did not err in granting summary judgment on this claim. *See In re Joye*, 578 F.3d 1070, 1074 (9th Cir. 2009) ("Summary judgment is appropriate where the evidence demonstrates that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.").

For the same reason the district court properly granted summary judgment to Spokane County on Waggy's second claim —that of inaction by the county. He insists that the county violated his constitutional rights by conducting inadequate training and supervision of its prosecutors in securing bench warrants. Here, he fails to provide any facts indicating either what training practices were employed by the county at the time of the alleged constitutional violation, or what type of constitutionally-mandated training was lacking. Summary

judgment was properly granted on this claim because there is no genuine issue of material fact created as to the county's procedures regarding the supervision or training of its prosecutors. *See id.*

## III

We hold that the district court properly awarded absolute immunity to DPA Fitzgerald for her actions because she was acting as a judicial advocate for the State before the court, and not as a complaining witness. Furthermore, summary judgment in favor of Spokane County was proper because on this record there exist no triable issues of material fact as to Spokane County's policies regarding how prosecutors secure bench warrants for the arrest of an individual under supervision.

**AFFIRMED.**